SPALLA et al., Appellees,

v.

FRANSEN, Appellant, et al.

[Cite as *Spalla v. Fransen,* 188 Ohio App.3d 658, 2010-Ohio-3460.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 2009–G–2910.

Decided July 23, 2010.

Kevin J.M. Senich, L.L.C., and Kevin J.M. Senich, for appellees.

Paulette Kohler Fransen, pro se.

MARY JANE TRAPP, Presiding Judge.

{¶ 1} Paulette Kohler Fransen appeals from a judgment of the Geauga County Court of Common Pleas, which enforced a real estate contract against her. She entered into a purchase agreement to buy a residential property but failed to go through with the transaction. The trial court awarded $144,500 in damages to the sellers. For the following reasons, we affirm.

{¶ 2} **Substantive Facts and Procedural History**

{¶ 3} Fransen entered into a purchase agreement with Frank Spalla and his ex-wife, Anne Buck, to buy their house at 15054 Hemlock Point Road, Russell Township, for the price of $695,000. The "Purchase Agreement Offer, Receipt and Seller's Acceptance" is apparently a form contract for residential properties used by the realtor, Coldwell Banker. It called for $10,000 of earnest money to be paid to "American Title Service, Chris Zuzolo, Attorney" within ten days of the seller's acceptance of an offer. It required the buyer to apply for financing within five days, and, if the loan was denied within 45 days, the buyer could waive the financing condition in writing. The agreement called for the proceeds of any mortgage loan to be obtained and the closing to occur within 90 days of the acceptance. The purchaser was listed as Paulette Kohler Fransen, trustee of Stonebridge Farm Trust, and she signed the document in her name.

{¶ 4} The purchase agreement indicated that Spalla and his ex-wife accepted Fransen's offer of $695,000 on July 20, 2004. Paragraph 13 of the document states: "Upon written acceptance, this offer * * * become a legally binding agreement * * *."

{¶ 5} The purchase agreement was then modified a half dozen times, as reflected in a series of documents titled "Modification and/or Supplement to Real Estate Purchase Agreement," all bearing Fransen's signature. The first modification was dated September 2, 2004. It stated that the financing condition was removed. The second modification was dated October 20, 2004. It extended the closing to October 28, 2004. The third modification was dated October 28, 2004, extending the closing date to November 9, 2004. The fourth modification was dated November 10, 2004. It extended the closing to November 29, 2004, and also added a provision under which the purchaser was to pay the sellers $150 per diem beginning with November 10, 2004, to cover the sellers' mortgage and utilities through the date of title transfer, for a maximum of 30 days.

{¶ 6} The fifth modification was dated December 8, 2004. It changed the purchaser's name from Stonebridge Farm Trust to Fransen. On the same date, Fransen also signed a final modification extending the closing date to December 31, 2004.

{¶ 7} Fransen never obtained financing for the house and did not go through with the transaction. In December 2005, Spalla and his ex-wife, Buck (collectively, "Spalla"), filed an action for specific performance. In June 2006, they sold the property for $555,000 and amended their complaint to seek money damages instead.[1]

{¶ 8} At trial, Fransen claimed that she did not sign three of the six documents modifying the purchase agreement. The court found her denial incredible because she contradicted herself regarding one of the documents—under direct examination, she claimed that she did not sign the document but contradicted herself under cross-examination. The trial court determined that the purchase agreement was indeed modified as shown by the series of documents she had signed.

{¶ 9} The court also discredited Fransen's claim that a change of condition in the property justified her nonperformance. She claimed that Spalla's ex-wife, Buck, removed the stained glass and chandelier from the house. The court

---

1. The complaint also named American Title Services, Inc., the title company, attorney Christopher Zuzolo, and the law firm Zuzolo, Zuzolo, & Zuzolo, as defendants. Spalla settled his claim with American Title Services for $28,500 and the trial court ruled in favor of Zuzolo and the law firm in their motion for summary judgment. Therefore, the only claim tried to the court was Spalla's breach-of-contract claim against Fransen.

observed that these items were expressively excluded in the purchase agreement. Fransen also claimed that the contract was nullified because Spalla refused to allow her to inspect the house a week before the scheduled closing. The court found that under the purchase agreement she had no right of inspection days before the closing date.

{¶ 10} As the court noted, Fransen's testimony was largely inconsistent, rambling, and disjointed. When asked if she was under any compulsion to purchase the property for $695,000, she answered: "I think he was forcing us to do this. He liked the house. He didn't want to sell it, and he was making this a most difficult transaction * * *."

{¶ 11} The trial court found Spalla's testimony credible. The court also found that he had fully performed under the contract. It found Fransen in breach of the purchase agreement and awarded Spalla damages of $140,000, the difference between the original contract price of $695,000 and the eventual sale price of $555,000, plus interest.[2]

{¶ 12} On appeal, Fransen, pro se, raises two assignments of error:

{¶ 13} "[1] The trial court erred in granting a judgment to Frank Spalla and Anne Buck, Plaintiffs, for a breach of contract in its order of June 9, 2009.

{¶ 14} "[2] The trial court erred in granting a judgment to Frank Spalla and Anne Buck, Plaintiffs, for an additional amount to pay for the new buyer's septic system, as a part of the judgment of June 9, 2009."

{¶ 15} **Standard of review**

{¶ 16} In a civil proceeding, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280–281, 8 O.O.3d 261, 376 N.E.2d 578.

{¶ 17} Furthermore, as an appellate court, we evaluate the findings of the trial court under a presumption that those findings are correct. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. This is because the trier of fact is in the best position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. As a reviewing court, we are unwilling to second-guess the trial court's determination when there is competent, credible evidence to support it, nor are we willing to weigh the

---

2. The court in addition awarded $4,500 to Spalla pursuant to the added provision requiring Fransen to pay the sellers $150 per diem beginning with November 10, 2004, to cover the sellers' mortgage and utilities expenses, for a maximum of 30 days.

credibility of the witnesses. *Karnofel v. Girard Police Dept.*, 11th Dist. No. 2004–T–0145, 2005-Ohio-6154, 2005 WL 3096757, ¶ 19.

{¶ 18} There are two questions to be resolved in this case: first, whether the buyer breached the purchase agreement; second, whether the trial court abused its discretion in awarding the damages. The first assignment of error relates to the issue of a breach.

{¶ 19} Fransen makes three claims under the first assignment of error. First, she claims that the trial court erred in ignoring evidence showing "a lack of a final deed." Second, she alleges that a correct deed vesting title in Fransen's name individually was not in escrow by December 31, 2004, and, third, therefore, the sellers themselves were in breach of the contract.

{¶ 20} **The Deed**

{¶ 21} The trial testimony indicates that Spalla and his ex-wife had signed a deed prepared by Zuzolo of American Title Services in October 2004 that, when delivered, would vest title in Stonebridge Farm Trust, the purchaser of record at the time. They delivered the signed deed to American Title Services. However, the purchaser was subsequently changed from the trust to Fransen, pursuant to the December 8, 2008 modification changing the purchaser's name. Spalla testified that he may have also signed a second deed but could not recall doing so. Shortly before closing, Zuzolo for the first time notified Spalla in a correspondence that he was not in possession of a correct deed vesting title in Fransen's name. In the same correspondence, Spalla was also notified that Fransen's check of $10,000 for earnest money could not be cashed due to insufficient funds.

{¶ 22} A similar factual circumstance existed in *Ritchie v. Cordray* (1983), 10 Ohio App.3d 213, 10 OBR 287, 461 N.E.2d 325. The buyer argued that the sellers were in breach because the sellers did not timely deliver the deed. The Tenth District rejected the claim. It reasoned that while there can be circumstances in which a contract will provide for conveyance of title prior to payment, such as when legal descriptions were needed to obtain financing, such circumstances were absent in the case.

{¶ 23} More importantly, the court alluded to the well-settled principle that tender of performance is not required when the other party clearly cannot or will not perform. Id. at 216, 10 OBR 287, 461 N.E.2d 325, citing *Gebbie v. Efros* (1917), 95 Ohio St. 215, 223, 116 N.E. 31; *Diem v. Koblitz* (1892), 49 Ohio St. 41, 29 N.E. 1124. Applying that principle, the court reasoned that the buyer neither tendered payment to the sellers nor obtained financing; "[u]nder these circumstances, defendants were under no obligation to convey title to a buyer who, even though pressed to close the sale, had given no indication that he could or would pay for the property." Id. See also *Carter v. New Buckeye Redev. Corp.* (Apr. 2,

1998), 8th Dist. No. 72501, 1998 WL 158855, *9 (tender of performance is not required when the other party clearly cannot or will not perform).

{¶ 24} Here, Spalla had delivered a deed prepared by Zuzolo of American Title Services before Fransen changed the name of the purchaser from Stonebridge Farm Trust to herself three weeks before the closing date. At the same time, it became increasingly clear to the parties that Fransen was unable to perform under the purchase agreement on the scheduled closing date—she had not paid the earnest money of $10,000 and had never obtained financing for the purchase of the house. Under these circumstances, Spalla had no obligation to deliver a technically correct deed.

{¶ 25} **The Closing Date**

{¶ 26} Under the first assignment of error, Fransen next claims that the trial court erred "in its determination of the termination date of the contract."

{¶ 27} She argues that because "there was no termination document filed with the title company," the purchase agreement was *still* in effect when the subsequent buyers made the offer to buy the house in 2006, and therefore she had a "first right of refusal" regarding the offer. For her claim of first right of refusal, she points to the following provision in the purchase agreement: "If another offer is presented to the seller, then this primary purchaser will have 72 hours after receiving & reviewing a copy of said offer, to waive the financing condition and proceed."

{¶ 28} The purchase agreement contemplated a closing of the transaction within 90 days of acceptance. The closing date was extended to December 31, 2004, by a series of modifications. After that date, the time for performance under the contract simply expired. The parties could have further extended the contract, but no evidence existed in the record indicating that they did so extend.[3] Fransen's contention that the purchase agreement was still in effect after December 31, 2004, is not supported by the record. Consequently, any claim regarding a first right of refusal under the purchase agreement is baseless.

{¶ 29} **Right of Inspection**

{¶ 30} Finally, Fransen maintains that "the trial court erred in [failing to] recogniz[e] [that] the denial of inspection [nullified] the contract." She wanted to

---

3. For her contention that the contract was still in effect after December 31, 2004, Fransen points to an August 3, 2005 letter from Spalla's attorney, in which the attorney advised her that a specific-performance action would be filed against her unless she closed the sale by August 20, 2005. Our review of the letter shows that the letter simply informed Fransen that a legal proceeding would be instituted to enforce the purchase agreement unless her breach of the contract was remedied. There is no indication that the parties had further extended the purchase agreement.

inspect the house a week before the scheduled closing date to determine any potential water or structural damage caused by weather conditions. She argues that Spalla's refusal nullified the contract.

{¶ 31} The purchase agreement provided that the purchaser would have ten days after acceptance for house inspections and if the purchaser was not satisfied with the results of the inspections, the purchaser should notify the seller within five days and specify any necessary remedy for the conditions. If the seller did not agree, the purchaser could either waive the condition or terminate the purchase agreement.

{¶ 32} By Fransen's own admission, she inspected the house several times; one of them was apparently designated as a final walkthrough. She claims she had the right for yet another inspection a week before the closing of the sale, even though she clearly was unable to complete the transaction as scheduled due to a lack of financing. The purchase agreement did not provide for a right of inspection upon demand. Fransen's 11th-hour request for further inspection appears to be more a pretext to avoid her contractual obligation than a genuine desire to inspect the property for any alleged weather damage.

{¶ 33} The first assignment of error is without merit.

{¶ 34} **Damages**

{¶ 35} The second assignment of error relates to the issue of damages. After finding Fransen in breach of the purchase agreement, the trial court found that Spalla made appropriate efforts to sell the property to another buyer at the best price obtainable. It awarded him damages of $140,000, the difference between the contract price, $695,000, and the amount Spalla eventually received for the house, $555,000.

{¶ 36} A reviewing court will not disturb a trial court's decision regarding its determination of damages absent an abuse of discretion. *Williams v. Kondziela*, 11th Dist. No. 2002–L–190, 2004-Ohio-2077, 2004 WL 877727, ¶ 19.

{¶ 37} "It is well established that the proper measure of damages for a breach of a real estate contract is the difference between the original contract price and the fair market value of the property at the time of the breach." *Williams* at ¶ 20. See also *Roesch v. Bray* (1988), 46 Ohio App.3d 49, 50, 545 N.E.2d 1301, citing 54 Ohio Jurisprudence 2d (1962) 731, Vendor and Purchaser, Section 181; 77 American Jurisprudence 2d (1975) 616, Vendor and Purchaser, Section 491; and *McCarty v. Lingham* (1924), 111 Ohio St. 551, 146 N.E. 64, paragraph three of the syllabus. Fair market value is the price that would be agreed upon at a voluntary sale by an owner willing to sell to a purchaser willing to buy. *In re Appropriation of Easements for Hwy. Purposes* (1963), 174 Ohio St. 441, 450, 23 O.O.2d 100, 190 N.E.2d 446.

## {¶ 38} Fair Market Value at Time of Breach

■ {¶ 39} A question remains in the case whether the price of the house when sold a year and half later represented the fair market value of the house at the time of the breach. In *Roesch,* the court stated that when the sale of real estate after a breach of contract is made within a reasonable time and at the highest price obtainable after the breach, it is evidence of the market value on the date of the breach. *Roesch* at 50, 545 N.E.2d 1301.

{¶ 40} Spalla relisted the house in early 2005, shortly after Fransen's breach of contract. He received only one offer, from David and Arlene Pincus, and eventually accepted their offer at $570,000. He testified that he did not accept their initial offer and tried to negotiate for a better price. He stated, "I negotiated to obtain the highest price I could possibly get, or I felt comfortable that I would get." The trial court concluded that Spalla made appropriate efforts to sell the property to another buyer at the best price obtainable.

{¶ 41} On appeal, Fransen does *not* challenge that finding by the court or otherwise argue that the sale price does *not* establish the fair market value of the property *at the time of breach.* Rather, her contention regarding the damages awarded in this case relates solely to the eventual reduction of the sale price from $575,000 to $550,000 due to a defective septic tank.

{¶ 42} The record reflects that Spalla and the new buyers contracted for a sale price of $570,000. However, the purchase agreement stipulated that $15,000 of the sale proceeds would be held in escrow in the event that the septic tank did not pass inspection and needed repair. The septic tank was later tested and a dispute arose between the new buyers and Spalla regarding whether the septic tank was defective. Separate litigation between Spalla and the buyers ensued, and the court determined that the septic tank failed the inspection. As a result, Spalla received only $550,000 from the sale of their house.

■ {¶ 43} Fransen did not present any evidence, such as an appraisal or other expert opinion, to establish the market value of the subject property at the time of the breach. To minimize the damages, she could have offered evidence of valuation to show that the fair market value of the house at the time of the breach was close to the $695,000 that she had offered. She did not. The only evidence before the court for the value of the house was its sale price a year and half later, and Spalla's testimony that $570,000 was the highest price obtainable, a price "[h]e felt comfortable [he] could get." As the owner, Spalla was competent to offer his opinion of the value of his property. *Kister v. Ashtabula Cty. Bd. of Revision,* 11th Dist. No. 2007–A–0050, 2007-Ohio-6943, 2007 WL 4485478, ¶ 18, citing *Amsdell v. Cuyahoga Cty. Bd. of Revision* (1994), 69 Ohio St.3d 572, 574, 635 N.E.2d 11.

{¶ 44} Based on the evidence, the trial court found that Spalla made appropriate efforts to sell the property at the highest obtainable price, which was $575,000, less $15,000 if the septic tank did not pass inspection. We note that Fransen could have exercised due diligence as a purchaser and included a similar condition regarding the septic tank, but she failed to do so.

{¶ 45} Under these circumstances, the trial court did not abuse its discretion in concluding that Spalla was entitled to the benefit of his bargain and awarding him the difference between the original contract price and the fair market price of the property at the time of the breach, that is, $550,000, which represented $570,000 reduced by $15,000 due to the defective septic tank.

{¶ 46} As the trial court rightly observed, this case involved a rather simple contract matter. However, Fransen never truly appreciated the legal effect of the terms and conditions of the contract that she entered. Because the contract was not ambiguous and Fransen failed to establish any valid defense for her nonperformance, the court must give effect to and enforce the purchase agreement as it was written. The second assignment is without merit.

{¶ 47} The judgment of the Geauga County Court of Common Pleas is affirmed.

Judgment affirmed.

RICE and CANNON, JJ., concur.