[Cite as *Smith v. Smith*, 2013-Ohio-4101.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| JULIE A. SMITH, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-G-3126** |
| DEREK A. SMITH, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 02 DC 0450.

Judgment: Affirmed.

*Julie A. Smith*, pro se, 17646 North Hampton Court, Chagrin Falls, OH 44023 (Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Derek A. Smith, appeals from the December 4, 2012 judgment of the Geauga County Court of Common Pleas, adopting in part, rejecting in part, and modifying a magistrate's decision.

{¶2} Appellant and appellee, Julie A. Smith, were married on October 19, 1996. One child ("the minor child") was born on March 7, 1998 as issue of the marriage.

{¶3} On May 24, 2002, appellee filed a complaint for divorce based on incompatibility. She demanded the following: temporary and permanent custody of the minor child; temporary and permanent child support and spousal support; an equitable division of property; and fees and costs in prosecuting the action. Appellant subsequently filed an answer and counterclaim, demanding, inter alia, that he be named residential parent and legal custodian of the minor child.

{¶4} Later that summer, the parties filed an agreed judgment entry on August 5, 2002. Appellant and appellee agreed to both be designated residential parents and legal custodians of the minor child; they agreed to follow the court's temporary parenting time schedule; and appellant agreed to pay child support in the amount of $636.08 per month.

{¶5} A month after the filing of the agreed judgment, appellant filed a motion to modify the August 5, 2002 entry. Appellant requested that he be granted full custody of the minor child. He alleged, inter alia, that appellee denied him visitation on numerous occasions, that appellee was alcohol dependent, and that he was concerned for his daughter's safety. Appellee filed a response, denying the allegations. On November 5, 2002, the court ordered the parties to submit to a custody evaluation and psychological examinations.

{¶6} On March 7, 2003, appellee filed a motion for leave to add new party defendants, (appellant's parents, Kendel and Judith Smith ("the Smiths")). Appellee maintained that the addition of the Smiths was necessary because the marital home was in their names. The court agreed with appellee and granted her motion to add the Smiths as new party defendants. As a result, on April 2, 2003, appellee filed a

2

complaint against appellant and the Smiths, demanding that the Smiths transfer the marital home to appellant and appellee, subject to an equitable division. The Smiths filed an answer later that month.

{¶7} Thereafter, the parties filed a Shared Parenting Plan, which the court found to be in the best interest of the minor child. A shared parenting decree was filed on December 3, 2003. Appellant was ordered to pay $471.64 in child support per month. Also on that date, the parties were granted a divorce. The court ordered the following: certain personal property was divided between the parties; each was ordered to pay certain debts; each was ordered to pay their own attorney fees and expenses; neither party was ordered to pay spousal support to the other; the Smiths were ordered to pay appellee $2,000; and appellee was ordered to relinquish her claims against the Smiths regarding the marital home.

{¶8} Over three years later, upon the request of appellant, an administrative review hearing for a modification of child support was held. On August 8, 2007, appellant was ordered to pay $595.14 per month, the new child support amount.

{¶9} Almost three years thereafter, on July 14, 2010, appellant filed three motions: (1) a motion to show cause and for attorney fees; (2) a motion to terminate the Shared Parenting Plan; and (3) an emergency ex parte motion for temporary custody. On August 9, 2010, appellant filed a motion to appoint a guardian ad litem for the minor child.

{¶10} On August 17, 2010, appellee filed four motions: (1) a motion to terminate shared parenting; (2) a motion for sole custody; (3) a motion for appellant to show cause why he should not be held in contempt; and (4) a motion for attorney fees.

{¶11} On September 24, 2010, the court granted appellant's motion to appoint a guardian ad litem. Attorney Mary K. Bender ("GAL") was appointed to serve as guardian ad litem for the minor child.

{¶12} In May 2011, a hearing was held before the magistrate on appellant's July 14, 2010 and appellee's August 17, 2010 motions. The main issues centered around alleged violations of the Shared Parenting Plan. Four incidents were discussed concerning appellee's handling of medical treatments with respect to the minor child, as well as appellee's handling of visitation.

{¶13} Before addressing the four incidents, we note that the Shared Parenting Plan states, in part:

{¶14} "2. The parents agree that if either has any knowledge of any illness, accident, problem in discipline, or change in the routine of [the minor child] or any other circumstances seriously affecting the health or welfare of [the minor child,] he or she will promptly notify the other of such circumstances. Mother and Father shall consult with each other about [the minor child's] health care and shall discuss all major non-emergency medical decisions before a course of treatment is begun. * * * In the event of a medical emergency, either parent may authorize any necessary emergency treatment for [the minor child] and shall immediately [notify] the other parent of the emergency.

{¶15} "* * *

{¶16} "5. Father and Mother shall mutually agree upon the selection of appropriate professionals to render services to [the minor child,] including but not limited to, physicians and/or dentists. Each parent has the right to be present with [the minor

4

child] at medical, dental and other health related examinations and treatments. Each parent has the right * * * to consult with any treating physician or dentist or health care provider [of the minor child.]"

{¶17} The first incident concerning appellee's handling of medical treatments occurred when the minor child was six years old. The minor child chipped a baby tooth while eating. Appellant testified that appellee did not take the minor child to the dentist until a few months after the injury. Appellee testified that she did not specifically recall when she took the minor child to the dentist but that she and appellant discussed the chipped tooth and he had recommended Dr. Weisberg.

{¶18} The second incident involved another chipped baby tooth which happened about a year and a half before the hearing. The minor child chipped another tooth and half of it came out. It did not become abscessed. The minor child told appellant about her tooth. The other half of the broken tooth came out a couple of days later. Appellee told appellant that she was taking the minor child to the dentist.

{¶19} The third incident involved a jammed finger that occurred during gym class. The injury was painful but nothing was broken. Appellee took the minor child for x-rays and treated her finger by wrapping it with a bandage. Appellee stated she told appellant about the injury, but it is unclear as to when she did so. Appellee said she sent the x-ray negatives to appellant. Appellant stated that the minor child told him about the injury.

{¶20} The fourth incident occurred on the evening of Saturday, July 10, 2010, when the minor child slipped and fell and broke her leg. The minor child was in great pain and appellee immediately took her to the emergency room. The treating physician

put the minor child's leg in a splint and recommended that she be seen again by an orthopedist within three to five days. Appellee did not call appellant to inform him about their daughter's injury until the following day, Sunday, July 11. Appellee admitted that she should have called appellant from the emergency room. Appellee took the minor child for a follow-up visit on Wednesday, July 14. The orthopedist put the minor child in a non-weight bearing cast and released her with instructions to return in about three weeks. The minor child went to appellant's house later that day. Appellant missed two and a half days of visitation, as he was supposed to have possession of his daughter on Mondays.

{¶21} There was also an issue regarding Christmas visitation at the hearing before the magistrate. The Shared Parenting Plan, in accordance with the Standard Visitation Guidelines, contains the heading, "Vacation Visitation," which provides:

{¶22} "Christmas visitation shall alternate according to the Christmas Eve/Day schedule. If the non-residential parent's visitation is Christmas Eve then he/she shall have December 19th from 9:00 a.m. to December 24th at 10:00 p.m. If the non-residential parent's visitation is Christmas Day, then he/she shall have December 24th at 10:00 p.m. to December 30th at 6:00 p.m."

{¶23} Appellant asserts that when he has the minor child from December 19 to December 24, the other dates, i.e., December 24 to December 30, are ordinary days for purposes of visitation, and vice versa. Appellant testified that every Christmas holiday since the parties' divorce, appellee has kept the minor child from him for times which are known and established to be his possession times, as a penalty for his exercising his Christmas visitation time, per the terms of the Shared Parenting Plan. Appellee's

6

interpretation of "vacation" includes the entire time from December 19 to December 30, with Christmas and Christmas Eve being the "holidays" that are specifically assigned to one parent or the other.

{¶24} The parties agreed to resolve conflicts through mediation, as evidenced under paragraph 14 of the Shared Parenting Plan. Appellee participated in one or two mediations but declined to mediate the Christmas issue because she did not have enough money to pay her half of the fee.

{¶25} Following the hearing, the magistrate made 92 findings and issued his decision on June 16, 2011. Appellant filed timely objections. Appellee later filed a response.

{¶26} On December 4, 2012, the trial court adopted in part, rejected in part, and modified the magistrate's decision. Specifically, the trial court ordered the following: both parties' motions to terminate the shared parenting plan were denied, but the court modified the schedule for parenting time; appellant was found to be in contempt due to his failure to pay child support in the sum of $3,811.24; the court sentenced appellant to pay a fine of $250 and serve 30 days in the Geauga County Safety Center, which was suspended on the condition that he purge himself of contempt by paying $500 or more per month until his child support arrears are paid in full; appellee was found not to be in contempt by reason of her failure to obey any court order; appellant was ordered to pay appellee $140.76 in full satisfaction of the claims for medical expenses; appellee was ordered to make the minor child available certain times for make-up parenting time; appellant was ordered to pay $5,000 for appellee's attorney fees; the court approved the GAL's fees in the total amount of $3,762.50, and held appellee responsible for one-

7

third ($1,254.17), and appellant for two-thirds ($2,508.33); the court assessed costs equally. It is from that judgment that appellant filed a timely appeal and asserts the following five assignments of error:[1]

{¶27} "[1.] The trial court erred and abused its discretion by finding the appellant to be in contempt of court and such finding was against the manifest weight of the evidence.

{¶28} "[2.] The trial court erred and abused its discretion by ordering appellant to pay $5,000.00 of appellee's counsel fees.

{¶29} "[3.] The trial court's finding that 'neither party offered evidence that it would be in the child's best interest to terminate the shared parenting plan and to designate either of them as the child's legal custodian' is against the manifest weight of the evidence.

{¶30} "[4.] The trial court's finding that '…plaintiff [appellee] is not in contempt by reason of her failure to obey any court order' is against the manifest weight of the evidence.

{¶31} "[5.] The trial court erred, both in the exercise of its discretion and as a matter of law in modifying the terms of the shared parenting plan."

{¶32} Preliminarily, we note that appellant's assigned errors challenge the trial court's adoption in part, rejection in part, and modification of the magistrate's decision. A trial court's decision to adopt, reject, or modify a magistrate's decision is a discretionary matter. *In re Ratliff*, 11th Dist. Portage Nos. 2001-P-0142 and 2001-P-0143, 2002-Ohio-6586, ¶14. As such, we will only reverse the trial court's judgment for

---

1. Although appellee was represented below by counsel, we note that she is proceeding pro se on appeal and did not file an appellate brief.

8

an abuse of discretion. The term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which neither comports with reason, nor the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).

{¶33} The Second Appellate District also adopted a similar definition of the abuse-of-discretion standard: an abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clerk No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed. 2004). When an appellate court is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Id.* at ¶67.

{¶34} In his first assignment of error, appellant argues that the trial court erred and abused its discretion in finding him in contempt of court, against the manifest weight of the evidence.

{¶35} A reviewing court must uphold the trial court's decision in a contempt proceeding absent a showing that the court abused its discretion. *Nolan v. Nolan*, 11th Dist. Geauga No. 2007-G-2757, 2008-Ohio-1505, ¶28, citing *Winebrenner v. Winebrenner*, 11th Dist. Lake No. 96-L-033, 1996 Ohio App. LEXIS 5511, *7 (Dec. 6, 1996), citing *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 75 (1991).

{¶36} In *Nolan, supra*, at ¶29-30, 32, this court further stated:

**{¶37}** "'The party asserting a show cause motion has the burden to prove that a breach has occurred by clear and convincing evidence.' *Winebrenner*, at *8. "'Clear and convincing evidence' has been defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Ohio State Bar Ass'n. v. Reid* (1999), 85 Ohio St.3d 327, 331.

**{¶38}** "'A prima facie showing of civil contempt exists when the moving party (* * *) produces evidence of nonpayment (* * *). Then, the burden shifts to the alleged contemnor to establish any defense he may have for nonpayment.' *Winebrenner, supra,* at *8. (Citations omitted).

**{¶39}** "* * *

**{¶40}** "'(* * *) [A] person charged with contempt for the violation of a court order may defend by proving that it was not in his power to obey the order.' *Courtney v. Courtney* (1984), 16 Ohio App.3d 329, 334 * * *." (Parallel citations omitted.)

**{¶41}** Once a person seeking contempt has demonstrated a defendant's failure to pay child support, the burden of proof shifts to the defendant to prove his or her inability to pay. *Rinehart v. Rinehart*, 87 Ohio App.3d 325, 328 (3rd Dist.1993).

**{¶42}** The standard of review for manifest weight is the same in a civil case as in a criminal case. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶17. Weight of the evidence concerns the greater amount of credible evidence offered in trial to support one side or the other of an issue. The party having the burden of proof will be entitled to a verdict if the trier of fact, on weighing the evidence, finds that the greater

10

amount of credible evidence sustains the issue to be determined. *Id.* at ¶12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). Moreover, the trier of fact may believe or disbelieve any or all of the testimony of a witness. *Swan v. Skeen,* 40 Ohio App.2d 307, 308-09 (10th Dist.1974). On review, there is a presumption in favor of the decision of the trier of fact. *Eastley* at ¶21. The appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the verdict must be overturned and a new trial ordered. *Thompkins* at 387.

{¶43} In the case at bar, appellant was found to be in contempt because of his failure to pay child support. As will be discussed more fully in the following assignment of error, there is a great disparity in the parties' incomes, with appellant earning much more than appellee. The evidence establishes clearly and convincingly that appellant has been in arrears in his support payments since September 2009. The CSED's attempt to pay down appellant's arrearage by collecting the extra 20 percent of his basic support obligation has not worked. Although appellant argues a loss of employment, the record reveals he has held management positions since 2003 and is currently a business owner.

{¶44} Appellant's income has been sporadic at times. However, appellant has an ongoing child support order that he is responsible to pay. Appellant, as a parent, has failed in his obligation to support his child. *See* R.C. 3103.03; *see also Nolan, supra,* at ¶34. He failed to establish the affirmative defense of inability to pay. Based on the facts in this case, the trial court did not abuse its discretion in finding appellant in

contempt for failure to pay child support, and such decision was not against the manifest weight of the evidence.

**{¶45}** Appellant's first assignment of error is without merit.

**{¶46}** In his second assignment of error, appellant contends that the trial court erred and abused its discretion by ordering him to pay $5,000 toward appellee's attorney fees.

**{¶47}** This court stated in *Riley v. Riley*, 11th Dist. Ashtabula No. 2012-A-0037, 2013-Ohio-1604, ¶67-68:

**{¶48}** "'In an action for divorce (* * *), a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.' R.C. 3105.73(A).

**{¶49}** "'(A)n award of attorney fees is within the sound discretion of the trial court.' *Rand v. Rand*, 18 Ohio St.3d 356, 359 * * * (1985), citing *Cohen v. Cohen*, 8 Ohio App.3d 109, 111 * * * (11th Dist.1983)." (Parallel citations omitted.)

**{¶50}** In the case at bar, at the close of the hearing before the magistrate, the parties' counsels stipulated that each had performed services and incurred fees. They agreed that instead of offering evidence at that hearing on the issue of fees, each could file a statement for the court's review and determination.

**{¶51}** Appellee's attorney submitted a detailed fee statement on May 20, 2011. The total amount owed was $7,484.05. Appellee's attorney stated that the fees incurred

12

were necessary in handling the various motions, and that the fees were reasonable in this legal community. In its December 4, 2012 judgment, the trial court ordered appellant to pay $5,000 toward appellee's attorney fees.

**{¶52}** The record establishes, and the magistrate's decision indicates, the following:

**{¶53}** "Mr. Lowe's [appellee's counsel] statement of attorney's fees and expenses shows an outstanding balance of $7484.05. That amount includes fees, courts costs of $125 he advanced for Plaintiff for the filing of her motion, and a small charge for copies. The statement appears to show that Plaintiff paid Mr. Lowe $124.

**{¶54}** "As the parties stipulated, Mr. Lowe's fees and charges are reasonable and were reasonably necessary for the prosecution and defense of the pending motions."

**{¶55}** The record reveals that appellant has enjoyed a greater overall income than appellee. Appellant has had several management positions since 2003, where his income reached $65,000. In 2010, he formed Iron Cowboy Productions, a limited liability company, in which he is the sole owner. Appellee, on the other hand, has worked as a restaurant server, where her earnings vary. Her hourly wages are relatively small, amounting to roughly $5,000 in 2010. As a server, appellee depends on tips. The recession decreased business at the restaurant where she is employed. Also, appellee provides health insurance for the minor child.

**{¶56}** In the record are appellant's 2008 and 2009, and appellee's 2008 and 2010, federal income tax returns. Although appellant's 2009 tax return showed a business loss, appellant's 2008 return showed a total income amount of $48,142. Also,

the 2007 Child Support Computation Worksheet showed appellant's annual income to be $52,000. On the other hand, appellee's 2008 tax return showed a total income amount of $30,271.60, and her 2010 return showed a total income amount of $26,258. Also, the 2007 Child Support Computation Worksheet showed appellee's annual income to be $25,759.20.

**{¶57}** Upon consideration, this court finds that the trial court's award was equitable. There was no abuse of discretion in the order requiring appellant to pay what amounts to two-thirds of appellee's attorney fees. *See Mlakar v. Mlakar*, 8th Dist. Cuyahoga No. 98194, 2013-Ohio-100, ¶33 (holding that the court's order requiring husband to pay roughly two-thirds of wife's attorney fees was not an abuse of discretion.)

**{¶58}** Appellant's second assignment of error is without merit.

**{¶59}** In his third assignment of error, appellant alleges the trial court's finding that "neither party offered evidence that it would be in the child's best interest to terminate the shared parenting plan and to designate either of them as the child's legal custodian" is against the manifest weight of the evidence.

**{¶60}** "Pursuant to App.R. 16(A)(7), an appellant is required to include in his appellate brief '(a)n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.'

14

{¶61} "In *Hawkins v. Anchors*, 11th Dist. Nos. 2002-P-0098, 2002-P-0101, and 2002-P-0102, 2004-Ohio-3341, at ¶59-60, quoting *Village of S. Russell v. Upchurch*, 11th Dist. Nos. 2001-G-2395 and 2001-G-2396, 2003-Ohio-2099, ¶10, this court stated:

{¶62} "'"(a)n appellant 'bears the burden of affirmatively demonstrating error on appeal.' *Concord Twp. Trustees v. Hazelwood Builders* (March 23, 2001), 11th Dist. No. 2000-L-040, 2001 Ohio App. LEXIS 1383. It is not the obligation of an appellate court to search for authority to support an appellant's argument as to an alleged error. *See Kremer v. Cox* (1996), 114 Ohio App.3d 41, 60 * * * (* * *). Furthermore, if an argument exists that can support appellant's assignments of error, 'it is not this court's duty to root it out.' *Harris v. Nome*, 9th Dist. No. 21071, 2002-Ohio-6994, (* * *)." (Parallel citations omitted.)' *See also Cominsky v. Malner*, 11th Dist. No. 2005-L-108, 2006-Ohio-6205, at ¶36-39; *Bischof v. Mentor Exempted Village School Dist.*, 11th Dist. No. 2007-L-056, 2007-Ohio-6155, at ¶24-25; and *Parkman Properties, Inc. v. Tanneyhill*, 11th Dist. No. 2007-T-0098, 2008-Ohio-1502, ¶43-44." *Brown Bark v. Rubertino*, 11th Dist. Lake No. 2009-L-046, 2009-Ohio-5897, ¶15-17. (Parallel citations omitted.)

{¶63} In the instant assignment of error, appellant has failed to support his assertions, and did not set forth any specific legal authority to support his contention that the trial court erred in finding that "neither party offered evidence that it would be in the child's best interest to terminate the shared parenting plan and to designate either of them as the child's legal custodian." Thus, he did not follow the requirements of App.R. 16(A)(7).

{¶64} Appellant's third assignment of error is overruled.

15

{¶65} In his fourth assignment of error, appellant maintains the trial court's finding that appellee "is not in contempt by reason of her failure to obey any court order" is against the manifest weight of the evidence.

{¶66} The foregoing law regarding contempt and manifest weight of the evidence addressed in appellant's first assignment of error applies here as well.

{¶67} Under this assignment, appellant makes specific references to the transcript, in accordance with App.R. 16(A)(7), in support of his argument that appellee is in contempt. Specifically, appellant asserts that appellee violated the terms of the Shared Parenting Plan with respect to visitation, mediation, the minor child's activities, and the minor child's medical appointments and treatments.

{¶68} This court stated in *Spalla v. Kohler*, 188 Ohio App.3d 658 (11th Dist.), 2010-Ohio-3460, ¶17:

{¶69} "[A]s an appellate court, we evaluate the findings of the trial court under a presumption that those findings are correct. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80 * * *. This is because the trier of fact is in the best position 'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' *Id.* As a reviewing court, we are unwilling to second-guess the trial court's determination where there is competent, credible evidence to support it, nor are we willing to weigh the credibility of the witnesses. *Karnofel v. Girard Police Dept.,* 11th Dist. No. 2004-T-0145, 2005-Ohio-6154, ¶19." (Parallel citations omitted.)

{¶70} The magistrate found appellant not to be a credible witness. The magistrate stated that although there were minor inconsistencies in appellee's

testimony, appellee was a "significantly more credible witness" than appellant. The magistrate made the determination of credibility based on hearing and evaluating the parties' testimony and observing their demeanor while testifying.

{¶71} Regarding visitation, the magistrate found that appellant failed to show that appellee did not honor and facilitate his parenting time rights. In summation, the magistrate stated in his decision:

{¶72} "[T]his Magistrate concludes that Plaintiff has not denied Defendant parenting time during the Christmas vacation period. The evidence clearly establishes that Defendant has had [the minor child] during every Christmas vacation period exactly and precisely in accordance with the schedule as correctly interpreted.

{¶73} "This Magistrate therefore concludes that the evidence does not establish that Plaintiff has violated the terms of the shared parenting plan by refusing to allow Defendant to have parenting time the plan gives him. Except for the incident when [the minor child] broke her leg, Plaintiff has followed the plan's specific provisions for parenting time to the letter. It would be odd indeed if one could violate a court order by complying with it, but that is the gist of Defendant's claim."

{¶74} Regarding the minor child's broken leg, the magistrate further concluded:

{¶75} "* * * Plaintiff is not in contempt of the parenting time order because of her failure to afford Defendant his parenting time immediately after [the minor child] broke her leg in July 2010. Neither party disputes that Defendant missed about 2-1/2 days of his scheduled summer vacation parenting time because Plaintiff kept [the minor child] home. This Magistrate concludes that Plaintiff proved, by a preponderance of the evidence, that she had a reasonable, though mistaken, belief, stemming from [the minor

child's] discharge orders, that she had to keep her home as part of the prescribed treatment for the broken leg. At that point, [the minor child] had a splint but not a cast. Then, after Plaintiff and [the minor child] had visited the orthopedist on the Wednesday, and the doctor had applied a cast, she went to Defendant's for the remainder of the week. Plaintiff has offered Defendant make-up time but for reasons neither party explained to the Court he has not taken that time. The usual purge condition for missed visitation is make-up time equal to the days missed. In effect, without being ordered to do so, Plaintiff has offered to purge herself of any contempt she might have committed. Thus, in addition to her having established an affirmative defense (a reasonable excuse for keeping [the minor child] home) she has also offered performance of the act the Court's order required her to do.

{¶76} "However that may be, Defendant is still entitled to his missed time with [the minor child] and the Court should order that Plaintiff must make her available to Defendant for those 2-1/2 days before school recommences for the 2100-12 (sic) academic year."

{¶77} Regarding mediating visitation disputes, the magistrate found:

{¶78} "Defendant attempted to mediate this dispute about Christmas and possibly other disputes about his parenting time. Plaintiff participated in one or two mediations but declined to mediate the Christmas problem (or some other specific dispute) because she did not have enough money to pay her half of the fee. Defendant offered no proof that he had stated in writing the issue about which he was complaining and he did not show why it was not practical for him to do that."

{¶79} The magistrate concluded:

18

{¶80} "Defendant failed to show that he had notified Plaintiff in writing of the dispute he wanted to mediate, possibly the disagreement about Christmas parenting time, perhaps some other issue, and he failed to explain why he did not give her the written notice the shared parenting plan requires. That notice is a condition precedent to a duty to mediate. This Magistrate therefore concludes that Defendant has failed to show that the duty to mediate arose at all."

{¶81} With respect to the minor child's activities, paragraph 12 of the parties' Shared Parenting Plan states that the minor child "'shall have (the) opportunity to participate in at least one extracurricular activity per season.'" This court's as well as the magistrate's and trial court's reading of the plan reveal that the plan does not define what "extracurricular activities" are or say that the minor child must participate in such activities. Rather, the plan merely provides the minor child with the "opportunity" to do so. The magistrate found that appellant did not offer any evidence that appellee failed to afford the minor child the chance to engage in any activity.

{¶82} With respect to the minor child's medical appointments and treatments, the magistrate specifically addressed paragraphs 2 and 5 of the parties' Shared Parenting Plan, as cited above. The magistrate discussed and made findings regarding each of the four "incidents," and concluded:

{¶83} "The evidence does not establish that Plaintiff has failed to provide [the minor child] with proper dental and medical care. To the contrary, she has been diligent about getting [the minor child] proper care; and Defendant, by not paying his share of health-care bills, has made her task more difficult."

**{¶84}** The magistrate was "in the best position 'to view the witnesses and observe their demeanor, gestures and voice inflections, and use [those] observations in weighing the credibility of the proffered testimony.'" *Spalla, supra,* at ¶17, quoting *Seasons Coal, supra,* at 80. Following the hearing, the magistrate made 92 findings and issued a thorough decision. The trial court adopted in part, rejected in part, and modified the magistrate's decision. The trial court agreed with the magistrate that appellee should not be held in contempt by reason of her failure to obey any court order. Contrary to appellant's assertions, the record supports this conclusion. As there is competent, credible evidence to support the decision, we will not second-guess the court's determination nor are we willing to weigh the credibility of the witnesses. *Spalla, supra,* at ¶17, citing *Karnofel, supra,* at ¶19.

**{¶85}** Appellant's fourth assignment of error is without merit.

**{¶86}** In his fifth assignment of error, appellant argues that the trial court erred in modifying the terms of the shared parenting plan.

**{¶87}** "R.C. 3109.04(E)(1)(a), which addresses modification of a shared parenting plan, requires the trial court to find (1) a change in the circumstances of the child and (2) that the modification is necessary to serve the best interest of the child before modifying a decree allocating parental rights and responsibilities. In contrast, R.C. 3109.04(E)(2)(c), which addresses termination of a shared parenting plan, merely requires the trial court to find that shared parenting is not in the best interest of the child. Thus, while modification requires the court to find a change in circumstances in addition to the child's best interest, termination only requires the court to find that termination of the plan is in the child's best interest." *In re K.R.,* 11th Dist. No. Trumbull 2010-T-0050,

2011-Ohio-1454, ¶47; *see also Waclawski v. Waclawski*, 11th Dist. Lake No. 2005-L-139, 2006-Ohio-3213, ¶16.

**{¶88}** In this case, each party separately moved the trial court for orders terminating the Shared Parenting Plan and designating him or her as the minor child's residential parent and legal guardian. Thus, because the parties sought to terminate rather than modify the Shared Parenting Plan, R.C. 3109.04(E)(2)(c) applies. However, the magistrate, in his June 16, 2011 decision, incorrectly cited and applied R.C. 3109.04(E)(1)(a), which deals with modifications. The magistrate, applying R.C. 3109.04(E)(1)(a) instead of R.C. 3109.04(E)(2)(c), determined there was no change in circumstances and recommended to deny both parties' motions for orders terminating the Shared Parenting Plan. The magistrate did not make the requisite finding under R.C. 3109.04(E)(2)(c) that termination was in the best interest of the minor child.

**{¶89}** Thereafter, the trial court, in its December 4, 2012 judgment, reviewed the evidence and the magistrate's decision in light of the appropriate legal standard of the best interest of the child, as required by R.C. 3109.04(E)(2)(c). Specifically, the court stated:

**{¶90}** "Upon that review, the Court finds that neither party offered evidence that it would be in the child's best interest to terminate the shared parenting plan and to designate either of them as the child's legal custodian. The Court therefore concludes that if the Magistrate had made his recommendation based on the 'best interest' test instead of the 'change of circumstances' test, the evidence would have fully supported that recommendation. The Court therefore finds and determines, based on its

21

independent review of the evidence, that under either legal standard, the evidence does not support the termination of the shared parenting plan."

{¶91} Thus, the trial court independently reviewed the evidence in light of the appropriate legal standard of the best interest of the child, as required by R.C. 3109.04(E)(2)(c), before denying both parties' motions for orders terminating the Shared Parenting Plan. The court further held that the parenting schedule under the Shared Parenting Plan would remain in effect, subject to modifications. The court noted that the parties had agreed to the GAL's recommendations for modification of the parenting time schedule. Upon consideration, we fail to see that the trial court committed any error.

{¶92} Appellant's fifth assignment of error is without merit.

{¶93} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Geauga County Court of Common Pleas is affirmed. It is ordered that appellant is assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.