[Cite as *A.E. v. P.L.*, 2024-Ohio-5424.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

A.E.                                                    Court of Appeals No.  L-24-1058

    Appellee                                       Trial Court No.  JC11215824

v.

P.L.                                                    **DECISION AND JUDGMENT**

    Appellant                                      Decided:  November 15, 2024

* * * * *

Laurel A. Kendall, for appellant

* * * * *

**DUHART, J.**

{¶ 1} Appellant, P.L. appeals from a judgment by the Lucas County Court of Common Pleas, Juvenile Division, finding him in contempt for non-payment of child support. For the reasons that follow, the trial court's judgment is affirmed.

## Statement of the Case and the Facts

{¶ 2} On June 18, 1996, the Lucas County Child Support Enforcement Agency ("LCCSEA") issued an administrative order ordering appellant to pay child support in the amount of $122.00 per month (plus 2% poundage) for his child, H.L., born June 30,

1995. The trial court adopted the administrative order in a judgment entry dated July 11, 2012, and notice of the order was sent to appellant on the same day.

{¶ 3} On May 9, 2022, LCCSEA filed on behalf of H.L.'s mother, A.E., a "Motion to Show Cause Arrears Only" against appellant. The motion stated that H.L. was emancipated, that child support was terminated effective June 30, 2013, and that appellant was in violation of the trial court's order in that he had failed to pay support as ordered and owed past-due support in the amount of $19,426.79, through and including March 31, 2022. The motion further stated that appellant had been ordered by way of the trial court's July 11, 2012 order to pay "child support arrears" in the amount of $122.00 per month (inclusive of processing fees)," that child support was terminated by administrative order filed on or about June 28, 2013, and that appellant's monthly payment of "$146.40 plus processing fees [was] to remain in effect until arrears are paid in full." Finally, the motion alleged that appellant had the ability to pay support as ordered but had failed to do so.

{¶ 4} On July 28, 2022, a summons was issued to appellant via certified mail at 440 Stout Road, Winchester, Ohio 45697. A hearing on the matter was set for November 21, 2022, and, at appellant's request, was continued to January 9, 2023. Appellant failed to appear for the January 9, 2023 hearing, and a bench warrant was issued for his arrest. Appellant appeared before the court on January 30, 2023, and a further hearing was set for April 17, 2023.

2.

**{¶ 5}** On April 11, 2023, appellant, pro se, filed a motion to dismiss the order to show cause. In this motion, appellant alleged: 1) that he was the residential parent of the subject child continuously, "before and after this matter began"; 2) that (at some point) he had received public assistance; and 3) that he had objected to the original order and did not sign the financial worksheet presumptively associated with the original order in approximately 1996. As grounds for dismissal, appellant claimed that LCCSEA, in pursuing the motion to show cause, "continued in their malicious prosecution." On April 12, 2023, appellant's motion was mailed to appellant's attorney, Jill Wolff.

**{¶ 6}** On April 20, 2023, the trial court denied appellant's motion, stating that it had found no evidence to support appellant's allegation of malicious prosecution.

**{¶ 7}** On July 28, 2023, attorney Wolff requested to be withdrawn from the case, on grounds that there had been a breakdown in communication with appellant. The trial court granted this request and appointed attorney Tarik Kadri as new counsel for appellant.

**{¶ 8}** On October 25, 2023, appellant, through attorney Kadri, requested permission to attend the next day's hearing via Zoom. Appellant failed to appear for the October 26, 2023 hearing, and a second warrant was issued for his arrest.

**{¶ 9}** Hearing on the motion to show cause took place before a magistrate on December 18, 2023. Appellant, still represented by attorney Kadri, testified that he was H.L.'s father, that A.E. was H.L.'s mother, and that H.L.'s birth date was June 30, 1995. He acknowledged that he was ordered to pay $122 per month through an administrative

3.

proceeding back in 1996 and that H.L. was now emancipated. He further acknowledged that child support was terminated effective June 30, 2013, but then he denied "any knowledge of the order for the arrearages."

{¶ 10} Although appellant did not agree with the agency records indicating that he was in arrears in the amount of $20,299.49 that was owed to A.E., he conceded that he last made a child support payment on January 12, 2015.

{¶ 11} Appellant testified that he was not physically and mentally able to work, and that he was in the process of applying for disability benefits. He also stated that he was receiving Medicaid and food stamps, had no source of income, and was currently unable to pay any money towards his arrears.

{¶ 12} Following appellant's testimony, counsel for LCCSEA indicated that if the court wished to continue the matter in order to allow appellant to bring medical documentation, LCCSEA would not object, because it seemed to LCCSEA that appellant may, in fact, have been unable to work. LCCSEA asked the court, in the alternative, that appellant be found in contempt and sentenced to "30 days with a purge of…$150 within 90 days."

{¶ 13} After hearing from counsel for both parties, the magistrate found appellant in contempt and sentenced him to serve 30 days at CCNO. The trial court stated that appellant could purge himself of the contempt determination by paying child support reaffirmed in the court's decision and by remitting a lump sum payment of $150 no later than March 20, 2024. In addition, the trial court ordered appellant to seek work by

4.

January 20, 2024. Finally, the magistrate stated that if appellant were to return in March with "something" to establish his inability to work, the agency would be willing to talk with him and work with him at that time.

{¶ 14} On February 10, 2021, the trial court adopted the magistrate's decision. Appellant timely appealed the trial court's decision.

## Assignments of Error

{¶ 15} On appeal, appellant asserts the following assignments of error:

I.      The court abused its discretion by finding Appellant in contempt for failure to pay child support when appellant testified that he has no income.

II.     In the alternative, the trial court abused its discretion by finding appellant in contempt for the full amount of the alleged arrearage when obligee did not appear at the hearing, and when the obligee's receipt of public benefits could affect the amount of a child support arrearage owed to him/her.

## Law and Analysis

{¶ 16} "'Contempt is defined in general terms as disobedience of a court order.'" *Geter v. Geter,* 2022-Ohio-2804, ¶ 22 (2d Dist.), quoting *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554 (2001). "'The power of contempt is inherent in a court, such power being necessary to the exercise of judicial functions.'" *Id.*, quoting *Denovchek v. Bd. of*

5.

*Trumbull Cty. Commrs.,* 36 Ohio St.3d 14, 15 (1988). "'Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order…. Thus, civil contempts are characterized as violations against the party for whose benefit the order was made.'" *Id.*, quoting *Corn* at 554-555.

{¶ 17} "'A prima facie case of contempt is made by establishing a prior court order and a violation of its terms,'" and "'contempt findings "must be supported by clear and convincing evidence."'" *Id.* at ¶ 23, quoting *Martin v. Martin*, 2008-Ohio-6336, ¶ 24 (2d Dist.). "After the moving party proves a violation, the nonmovant bears the burden of establishing a defense for noncompliance." *Id.* at ¶ 21, citing *Martin.*

{¶ 18} "'Failure to pay court-ordered child support…constitutes civil contempt.'" *Kolenic v. Kolenic,* 2018-Ohio-1106, ¶ 19 (11th Dist.), quoting *Dilley v. Dilley*, 2013-Ohio-4095, ¶ 23 (11th Dist.) "Once a person seeking contempt has demonstrated a defendant's failure to pay, the burden of proof shifts to the defendant to prove his or her inability to pay.'" *Id.*, quoting *Smith v. Smith*, 2013-Ohio-4101, ¶ 41.

{¶ 19} An appellate court reviews contempt orders for abuse of discretion. *Id.* at ¶ 24, citing *State ex rel. Cincinnati Enquirer v. Hunter*, 2013-Ohio-5614, ¶ 21. An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983), quoting *State v. Adams,* 62 Ohio St.2d 151, 157 (1980).

6.

**First Assignment of Error**

{¶ 20} Appellant argues in his first assignment of error that the trial court abused its discretion by finding him in contempt for failure to pay child support where he had testified as to his inability to work. In making this argument, appellant does not dispute the sufficiency of LCCSEA's evidence that he was in violation of the court order to pay child support. Instead, he challenges the trial court's rejection of his asserted defense of inability to pay.

{¶ 21} Appellant did testify as to his inability to work. But because he offered no documentary evidence in support of his claim, the magistrate was forced to make a finding based entirely on the credibility of appellant's own, self-serving testimony. It is well recognized that the trial court occupies the best position to evaluate a witness's credibility. *In re L.C.*, 2024-Ohio-283, ¶ 72 (6th Dist.). Given the evidence presented at the hearing, the magistrate, and by extension the trial court, did not abuse its discretion in determining that appellant failed to meet his burden.

{¶ 22} Appellant next points to his allegation (set forth in his motion to dismiss) that he received "public assistance" at some point during the life of the child support order. He states that, "arguably," his obligation to pay support due under the child support order should have been suspended for the (wholly unspecified) period of time during which he maintains he was receiving the referenced assistance. Appellant's allegation of past receipt of public assistance, even if construed as evidence, is not proof of a current inability to pay.

7.

**{¶ 23}** To the extent that appellant also disputes the amount of arrearage he has been ordered to pay, we note that under R.C. 3119.83, "'a court or child support enforcement agency may not retroactively modify an obligor's duty to pay a delinquent support payment.'" *Matter of J.N.*, 2018-Ohio-2557, ¶ 25. Here, appellant did not move the court to reduce his arrearage before the arrearage became final.

**{¶ 24}** Finally, appellant argues that although he was aware of the child support order, he was not aware of any order to continue to pay arrearages following the emancipation of H.L. Here, the record clearly shows that appellant: 1) was subject to a continuing order of the court to pay child support arrearages (as distinguished from a child support arrearage that was reduced to a lump sum judgment); and 2) had been notified of -- and was admittedly aware of -- the continuing order. The law is clear that contempt is the proper remedy to enforce continuing orders to pay child support arrearages, even after the child who is the subject of the order is emancipated. *See Sizemore v. Sizemore*, 2010-Ohio-1525, ¶ 15 (12th Dist.) (contempt is the proper remedy to enforce continuing orders to pay child support arrearages); *Cramer v. Petrie,* 70 Ohio St.3d 131, 131 (1994) (holding that an order to pay child support may be enforced by means of imprisonment through contempt proceedings even after the child who is the subject of the order is emancipated); *see also* R.C. 3121.36 (the termination of a court support order or administrative child support order does not abate the power of any court or child support enforcement agency to collect any overdue and unpaid support or arrearage owed under the terminated support order or the power of the court to punish

8.

any person for a failure to comply with, or to pay any support as ordered in, the terminated support order).

{¶ 25} Because we find that the trial court correctly applied the law to the facts of this case and did not abuse its discretion in finding appellant in contempt of the continuing order to pay child support, appellant's first assignment of error is found not well-taken.

## Second Assignment of Error

{¶ 26} Appellant argues in his second assignment of error that the trial court abused its discretion by finding appellant in contempt for the full amount of the alleged arrearage "when the obligee did not appear at the hearing, and when the obligee's receipt of public benefits could affect the amount of a child support arrearage owed to her."

{¶ 27} In support of this claim, appellant cites *Byrd v. Knuckles*, 2008-Ohio-6318, ¶ 6, for the proposition that "[a]s a general rule, arrearages may be forgiven by the obligee as long as public assistance is not involved." Such authority is inapplicable to the facts of this case, where there is no evidence to suggest that Eccleston, whether or not a recipient of public assistance, had any intention or desire to forgive any portion of the subject arrearage. Appellant's argument is without merit and is dismissed. Accordingly, appellant's second assignment of error is found not well-taken.

## Conclusion

{¶ 28} The trial court did not abuse its discretion in finding appellant in contempt of the continuing order to pay child support. Therefore, the judgment of the Lucas County

9.

Court of Common Pleas, Juvenile Division is affirmed. Appellant is to pay the costs of

appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.            _____
                                                     JUDGE

Christine E. Mayle, J.           

                                          _____
Myron C. Duhart , J.                                                    JUDGE
CONCUR.

                                          _____
                                                     JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.