[Cite as *In re J.N.*, 2018-Ohio-2557.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

IN THE MATTER OF: J.N.

:
:
:
:
:
:
:
:
:
:
:

Appellate Case No. 2017-CA-61

Trial Court Case No. S21036

(Appeal from Common Pleas Court-
Juvenile Division)

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of June, 2018.

. . . . . . . . . . .

CHRISTOPHER A. MURRAY, Atty. Reg. No. 0059357, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Suite 200, Xenia, Ohio 45385
    Attorney for Appellee

BENJAMIN ELLIS, Atty. Reg. No. 0092449, 805 H Patterson Road, Dayton, Ohio 45419
    Attorney for Appellant

. . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** This matter is before the Court on the Notice of Appeal of Defendant-Appellant, T.N. T.N. appeals from the November 13, 2017 "Judgment Entry" of the Greene County Juvenile Court, which was issued following his sentencing hearing. The hearing occurred after the court had overruled T.N's objections to a Magistrate's decision which granted the Greene County Child Support Enforcement Agency's ("Agency") Motion for Contempt of Court. The Agency's motion was filed due to T.N.'s failure to comply with an order to make monthly payments of $51.99 toward a child support arrearage, plus a two percent processing charge. The court determined that as of October 31, 2017, T.N. had a child support arrearage of $7,142.07, and the court ordered him to pay his monthly obligation. The court sentenced T.N. to 60 days in the Greene County Jail, to be served on consecutive weekends beginning February 9, 2018. The court concluded, however, that if T.N. paid $25.00 towards the public defender application fee and $75.00 toward his arrearage on or before February 2, 2018, the court would suspend his jail sentence. We hereby affirm the judgment of the trial court.

**{¶ 2}** The record reflects that T.N. is the father of J.N. On October 17, 1989, T.N. was ordered to pay child support bi-weekly in the amount of $20.00, "plus 2% poundage by wage deduction," through the Agency. He was found to be in contempt of court on June 19, 1997, for failure to pay child support. In August 2005, the Agency terminated T.N.'s ongoing child support obligation due to the child's attainment of the age of majority. T.N. was ordered to continue to pay $53.03 a month toward his arrearage, which consisted of his initial obligation of $43.33 per month, plus an additional $8.66 per month for the arrearage, and a processing charge of $1.04.

{¶ 3} On January 5, 2017, the Agency filed the Motion for Contempt against T.N. A hearing was held on the motion on June 27, 2017. Called as on cross-examination, T.N. testified that he began receiving Supplemental Social Security Income ("SSI") in October of 2006. He testified that he moved to Dayton in January of 2015 from California. T.N. stated that he was diagnosed with post-traumatic stress disorder and "sleeping disorder" as a child, "after my dad shot his wife and shot hisself [sic] in front of me." T.N. testified that when he was in school "they diagnosed me as hypertension [sic] deficit disorder." T.N. testified that he does not work, and that he last did so "when I got out of prison in 2004." T.N. testified that at the time he "was working at Dayton Hardwood Floors, and I reported child support, and they reinstated my license, and I was paying them. And then my mom passed away before I got out, so my step-dad didn't want me staying there, so I was staying with a buddy of mine named Keith, and he passed away, so I left and went to Tennessee." T.N. testified that he "met a girl in Tennessee, and she was native from San Francisco, so me and her moved back up there, and we was together for a while and split up, and I stayed there and she went to Arizona."

{¶ 4} Regarding his expenses, T.N. testified that he has $63.00 left at the end of each month, and "that isn't included if I have to take my dogs to the vet or something, or if I need something else." He acknowledged that his monthly child support obligation is $53.03, and that his arrearage is $7,181.49. T.N. testified that when he was in California, "the prosecutor called me from San Francisco, Division of Juvenile," and advised him that he would not be prosecuted there due to his mental disability. According to T.N., the prosecutor "told Ohio and Washington state he was not going to prosecute me, he wasn't bringing me to court." T.N. testified that "then he called me three days later and told me

he had good news and some bad news.   He said, Spokane dropped your order, * * * but Greene County won't."

{¶ 5}   On direct examination, T.N. testified that Exhibit A, a handwritten document, reflects his monthly expenses, including rent, utilities, phone, a bed rented from Aaron's, and a bus pass.   T.N. testified that Exhibit B is a statement from his landlord indicating that his rent is $325.00, and that Exhibit C is a statement from the Social Security Administration indicating that he receives $715.00 per month.

{¶ 6} T.N. testified that he estimated his household expenses at $40.00 a month for such items as hygiene products.   He testified that he has two dogs, one of which is a service dog, and that they occasionally cause him additional expense.   T.N. testified that he occasionally purchases clothing at the Thrift Store.   He testified that he works out extensively at home, and that his workouts cause him to need to eat five times a day, resulting in an additional expense of $20.00 to $30.00 beyond his food stamps benefits of $192.00 per month. T.N. testified that he is supposed to receive $735.00 in SSI, but that $20.00 is deducted each month to recover an overpayment. After considering his expenses, T.N. testified, "I probably have like maybe 17, 20 bucks left over before the first" of the month.

{¶ 7} When asked by the Magistrate to "tell me what you do typically throughout a day," T.N. testified as follows:

> Well, I get up in the morning, and I'm usually up by 6 or 7:00.   I walk, take a walk.   Come back about 7.   I eat.   I work out from like 8 to 9.   I sit around, or if it's a day I have to go to my appointments, I go to my appointments.

And then if I'm in my house and I'm starting to feel depressed or suicidal or this and that, I will take a walk or get on the bus and leave. So I get my thoughts cleared up, my mind, and then I come back and I'll just sit at the house. I don't like being around too many people, being in too many places. I don't get along - that's why I don't work. I have a problem with authority sometimes, with people telling me what to do, and I just don't like being around people too much. So I apparently stay by myself. I'm in my house almost all the time.

{¶ 8} The Magistrate rendered a decision on June 27, 2017, finding that there "is an arrears order in the amount of $53.03 per month," and an overall arrearage of "$7,191.49 in which out of the total arrears, $293.72 is owed in Administrative fees." The Magistrate found "based upon [T.N.'s] testimony that he could pay something towards his arrearage, though he has chosen not to pay anything towards same [sic]." The Magistrate found that the "child support arrearages are established as listed above and adopted as an Order of the Court." The Magistrate found T.N. in contempt of court and indicated that "[i]n order to purge your contempt, you must pay your monthly obligation as Ordered. If the support obligation is paid monthly, your appearance at the sentencing hearing will not be necessary." The Magistrate sentenced T.N. to 60 days in jail, "suspended on the condition that all future support payments are made pursuant to Court order." The Magistrate scheduled a sentencing hearing for September 11, 2017. The juvenile court adopted the Magistrate's Decision as an order of the court on the same day.

{¶ 9} T.N. filed objections to the Magistrate's decision on July 11, 2017, arguing

that gross income, for purposes of computing child support, does not include SSI, and that his only source of income is SSI. T.N. directed the court's attention to *Morris v. Morris*, 4th Dist. Meigs No. 02CA10, 2003-Ohio-5598, which quoted *Ross v. Ross*, 4th Dist. No. 97CA2383, 1999 WL 624539 (Aug. 10, 1999). In *Ross*, the Fourth District concluded that "[o]rdering appellant to pay child support when the parent's 'total annual gross income' is zero and the parent's only source of support is SSI is an abuse of discretion." *Id*. at *3.

{¶ 10} On August 4, 2017, the Agency responded to T.N.'s objections, directing the court's attention to *Morgan v. Williams*, 10th Dist. Franklin No. 12AP-694, 2013-Ohio-3098, ¶ 10, which held as follows:

> Here, appellee was subject to a court order establishing the total amount of his child support arrearage. The court's termination of appellee's duty to pay his delinquent child support payments is contrary to the express terms of R.C. 3119.83. *Byrd v. Knuckles,* 120 Ohio St.3d 428, 2008-Ohio-6318, ¶ 5 (noting "R.C. 3119.83 prohibits judges from retroactively modifying child-support orders" but does not "nullify reasonable agreements reached by the parties to a child-support order"). Although R.C. 3119.01 prohibits inclusion of SSI payments in calculating gross income for child support, nothing in the record demonstrates appellee received SSI during the time his arrearages accumulated. *See Bonenfant v. Bonenfant,* 12th Dist. No. CA2005-03-065, 2005-Ohio-6037, ¶ 14, 19 (concluding trial court erred in retroactively modifying a child support arrearage).[1]

---

[1] In *Bonenfant*, the Twelfth District determined that the domestic relations court abused

Because the termination of appellee's child support arrearages contradicts R.C. 3119.83, we sustain appellant's assignment of error.

{¶ 11} On September 21, 2017, the juvenile court overruled T.N.'s objection, noting that under R.C. 3119.83, " 'a court or child support enforcement agency may not retroactively modify an obligor's duty to pay a delinquent support payment.' " After considering *Morris* and *Ross*, the court noted that while those cases "bear quite a substantial amount of similarity to each other and share a certain likeness to the present case there are some important distinctions between [T.N.'s] situation and those of Mr. Morris and Mr. Ross." The court concluded that unlike in *Morris* and *Ross*, T.N. amassed his arrearage prior to receiving SSI, and that J.N. was emancipated before T.N. received any SSI benefits. The court concluded as follows:

* * * O.R.C. § 3119.01 bars the court from including SSI benefits in its calculation of gross income when determining child support payments, however § 3119.83 bars the court from retroactively modifying child support orders and substantive caselaw protect[s] arrearages accrued from such modifications as well. Furthermore, it would be wholly illogical to terminate [T.N.'s] obligations based upon §3119.01 as the child support order which is now in arrears was made based upon gross income that did not include any SSI benefits. * * *

The Court finds the Magistrate's Decision issued on June 27, 2017

---

its discretion in eliminating father's child support arrearage on his motion. Father argued that the child resided with him and was supported by him for 18 months. The Twelfth District concluded that since "no change of custody order was ever issued, the application of R.C. 3119.83 is clear. Equity is inapplicable." *Id.* at ¶ 19.

holding Defendant in contempt of court for nonpayment of child support and finding an arrearage of $7191.49 to be proper, and thereby **OVERRULE[S]** Defendant's objection.

(Emphasis sic.)

{¶ 12} At the sentencing hearing that occurred on November 13, 2017, the following exchange occurred in T.N.'s direct examination:

Q. Have you been attempting to make some type of regular payments towards the child support?

A. Last time I came to court, they wanted me to start paying in July. I didn't pay in July because I had to catch up on my rent, which I had my landlord send me a thing where I had to catch up on my rent. July was 550. I paid in August. They raised my rent in August, 450. I got that here, plus the thing saying that I paid.

Q. * * * Here's my question, okay? * * * Have you attempted to make consistent - -

A. Yes.

Q. - - regular payments?

A. Since then I tried.

Q. And you've made payments in - -

A. August.

Q. - - August?

A. $33.

Q. And in September?

A.   September I had to take my dogs to the vet.   I got the papers on that.   I had to pay that.   That was 40 something dollars.   I got 49 dollars that I pay my bills with.   And I paid in October and November.

**{¶ 13}** The following exchange occurred on cross-examination:

Q.   Do you have any other child support cases?

A.   There's one they just sent me.   I don't understand it.   I thought it was from the one in Spokane they dismissed.   But apparently when I gave them the case number, they told me in Spokane that wasn't the right case number. They dismissed that when I was in California, what I owed them.   So then I called up and they said it was from when [B] and [S] was in foster care that they took from my ex-wife.   I don't understand what's going on with that right now.

**{¶ 14}** We note that on re-direct examination, T.N. testified that he has been receiving SSI since 2008, in contrast to his testimony at the hearing before the magistrate, that he began receiving SSI in 2006.

**{¶ 15}** In its Judgment Entry, the court noted that the Agency "provided the Court with a case summary sheet, as of October 31, 2017, reflecting an overall arrearage of $7,142.07 in this case."   The court sentenced T.N. to 60 days in jail on consecutive weekends commencing February 9, 2016, suspended on the condition that he pay $25.00 towards the public defender fund and $75.00 toward his arrearage by February 2, 2018. The Judgment Entry provides in part, **"You are hereby ordered to also pay your monthly child support obligation every month.   Failure to pay your monthly child support obligation may result in the Prosecutor's Office either filing another**

**Complaint for Contempt of Court or a Motion to Impose the suspended sentence.**"

(Emphasis sic.)

{¶ 16} T.N. asserts one assignment of error herein as follows:

THE TRIAL COURT ERRED IN FINDING APPELLANT IN CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT AND REQUIRING APPELLANT TO PAY CHILD SUPPORT WHERE APPELLANT RECEIVES SSI, A MEANS TESTED BENEFIT.

{¶ 17} T.N. asserts in part as follows:

In the instant case, the Court enforced an existing support order against Appellant, a recipient of SSI and food stamps, finding him in contempt and requiring him to pay toward an arrearage or face jail time. Because Appellant is a recipient of SSI, he cannot have "gross income" for the purposes of calculating child support, and an income may not be imputed to him under R.C. 3119.01 unless the court determines it is in the best interest of the child. There is no indication in the record of a forthright "best interest" analysis pursuant to R.C. 3119.05(I), or even of any inquiry pertaining to "best interests of the child" factors. The court merely found an amount of arrearage. In fact, nearly all of the transcript pertains to Appellant's disability, living expenses, pets, and SSI; Appellant's daughter is not even mentioned in passing. Therefore, Appellant is considered to have no income as the trial court made no best interest analysis and took no evidence pertaining to it. The trial court could not in its discretion hold Appellant in contempt nor order Appellant to pay child support whatsoever,

as he had no income and the trial court took no evidence regarding the child or "best interest" factors.

**{¶ 18}** The State responds that on February 1, 2018, T.N. paid $25.00 toward the public defender application fee and $75.00 toward his child support arrearage, and that T.N. accordingly did not have to report to jail on February 9, 2018 to begin serving his sentence. The State asserts that, as a result, T.N.'s "assignment of error should be moot."

**{¶ 19}** The State further responds as follows:

The record contains clear and convincing evidence that Appellant had a valid order to pay child support, Appellant knew he had to pay child support, and Appellant failed to comply with the child support order. As a result, neither Magistrate David McNamee nor the trial court abused their discretion when they each found Appellant in contempt for failing to pay child support as previously ordered and sentenced Appellant to sixty days in jail.

* * *

Here Appellant has failed to establish that he was unable to comply with the child support order. At the hearing on June 27, 2017, Appellant provided Magistrate David McNamee three exhibits, one of which detailed Appellant's monthly expenses. The exhibit Appellant prepared indicated that Appellant had $63.00 left each month after his other living expenses. Magistrate David McNamee found that Appellant had the ability to pay something toward the child support arrearage but chose to pay nothing. * * *

\* \* \*

At the sentencing hearing on November 13, 2017, the trial court had information that Appellant last paid toward his child support arrearage on November 1, 2017. At that time, Appellant paid $20.00. The trial court determined that Appellant had the ability to pay toward the child support arrearage. As a result, the trial court did not abuse its discretion when the trial court found that Appellant was able to comply with the child support order. Furthermore, the trial court did not abuse its discretion when the trial court ordered Appellant to report to the Greene County Jail on February 9, 2018 to begin serving the sixty days jail sentence on consecutive weekends.

{¶ 20} Regarding the State's mootness argument, in *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 555, 740 N.E.2d 265 (2001), the Supreme Court of Ohio "noted the well-established principle that 'where the parties settle the underlying case that gave rise to the civil contempt sanction, the contempt proceeding is moot, since the case has come to an end.' " *See also State v. Chavez-Juarez*, 185 Ohio App. 3d 189, 2009-Ohio-6130, 923 N.E.2d 670, ¶ 26. As noted above, the juvenile court agreed to suspend T.N.'s jail sentence if he paid $25.00 towards the public defender application fee and one $75.00 payment toward his arrearage. The fact that T.N. subsequently avoided his jail sentence does not render the contempt proceeding moot, since the court indicated that if T.N. fails to make monthly payments on the arrearage, the 60-day jail term would take effect.

{¶ 21} As this Court has previously noted:

"A prima facie case of civil contempt is made when the moving party

proves both the existence of a court order and the nonmoving party's noncompliance with the terms of that order." *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4. "Clear and convincing evidence is the standard of proof in civil contempt proceedings." *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP1176, 2011-Ohio-5972, ¶ 13. We review the trial court's decision whether to find a party in contempt under an abuse-of-discretion standard. *Wolf* at ¶ 4.

*Jenkins v. Jenkins*, 2012-Ohio-4182, 975 N.E.2d 1060, ¶ 12 (2d Dist.).

{¶ 22} As this Court has further previously noted:

* * * [A]n abuse of discretion " 'has been defined as an attitude that is unreasonable, arbitrary, or unconscionable.' " *Mossing-Landers v. Landers*, 2016-Ohio-7625, 73 N.E.3d 1060, ¶ 21 (2d Dist.), quoting *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). We have also repeatedly stressed, in following *AAAA Enterprises*, that " 'most instances of abuse of discretion will result in decisions that are simply unreasonable,' " and that decisions are unreasonable if they are unsupported by a sound reasoning process. *Id.* *See also, e.g., Myers v. Brewer*, 2017-Ohio-4324, 91 N.E.3d 1249, ¶ 12 (2d Dist.).

*Buckingham v. Buckingham*, 2d Dist. Greene No. 2017-CA-31, 2018-Ohio-2039, ¶ 54.

{¶ 23} We conclude that an abuse of discretion is not demonstrated in the juvenile court's finding of contempt. The arrears order is in the record before us, and it is undisputed that T.N. failed to comply with the order.

{¶ 24} "R.C. Chapter 3119 governs child support orders and R.C. Chapter 3123 governs default under a child support order." *Morgan*, 10th Dist. Franklin No. 12AP-694, 2013-Ohio-3098, at ¶ 9. R.C. 3123.18 provides that, if a court or child support enforcement agency finds an obligor to be in default under a support order:

> * * * each payment or installment that was due and unpaid under the support order that is the basis for the default determination plus any arrearage amounts that accrue after the default determination and during the period of default shall be a final judgment which has the full force, effects, and attributes of a judgment entered by a court of this state for which execution may issue under Title XXIII of the Revised Code.

{¶ 25} R.C. 3119.83 provides, "[e]xcept as provided in section 3119.84 of the Revised Code, a court or child support enforcement agency may not retroactively modify an obligor's duty to pay a delinquent support payment." Finally, R.C. 3119.84 provides, "[a] court with jurisdiction over a court support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the court support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered." "Pursuant to these statutes, Ohio courts are permitted to make a determination that a support order may be modified and may make that modification retrospective to the date the motion was filed. * * *." *Powell v. Powell*, 2d Dist. Montgomery No. 19537, 2003-Ohio-1050, ¶ 13.

{¶ 26} The contested payments herein are not current child support payments but rather are arrearage payments, as T.N. did not fulfill his child support obligation when J.N. was of minor age. J.N. reached the age of majority and was emancipated in 2005, and

T.N. testified that he began receiving SSI in 2006 or 2008. As in *Morgan*, T.N. did not receive SSI during the time his arrearage accumulated. T.N. did not move the court to reduce his arrearage. *See Bennett v. Bennett*, 9th Dist. Summit No. 22798, 2006-Ohio-1305 (holding trial court did not abuse its discretion in refusing to reduce arrearage payments from $389.80 per month to $50.00 on father's motion where father's sole source of income was Social Security disability in the amount of $776.80 per month); *accord Wortham v. Wortham*, 2d Dist. Montgomery No. 23831, 2010-Ohio-4524 (holding trial court did not err in lowering father's arrearage payment from $377.00 per month to $75.00 per month on his motion where father received Social Security disability income of $727.00 per month). We finally note that the juvenile court did not impermissibly impute income to T.N., as he suggests.

{¶ 27} Based upon the foregoing, the court did not err in requiring T.N. to pay his child support arrearage. T.N.'s assignment of error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J., concurs.

FROELICH, J., concurring:

{¶ 28} The Appellant's child support order was calculated, and the final arrearage determined, prior to his eligibility for and receipt of Social Security payments. The law, R.C. 3119.01(C)(7)(a), that such means-tested benefits would be excluded from any current calculations of support or arrearage is irrelevant.

**{¶ 29}** Contempt is the willful failure to comply with a court order – in this case the failure to pay the arrearage. The only question is whether the trial court abused its discretion when it found that Appellant had approximately $60 available at the end of each month from which he could make some payment toward the arrearage. I concur that there was no abuse of discretion.

Copies mailed to:

Christopher A. Murray
Benjamin Ellis
Hon. Adolfo A. Tornichio