[Cite as *Geter v. Geter*, 2022-Ohio-2804.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CAROL D. GETER (WRIGHT-SANTOS) DECEASED | : | |
| | : | |
| | : | Appellate Case No. 29312 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 1993-DR-1447 |
| v. | : | |
| | : | (Domestic Relations Appeal) |
| MARK ANTHONY GETER | : | |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of August, 2022.

. . . . . . . . . . .

GREGORY J. SAUER, Atty. Reg. No. 0034507, Montgomery County Child Support Enforcement Agency, 1111 South Edwin C. Moses Boulevard, P.O. Box 8744, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

DAWN S. GARRETT, Atty. Reg. No. 0055565, 70 Birch Alley, Suite 240-24005, Beavercreek, Ohio 45440
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Mark Geter, appeals from a judgment finding him in contempt for non-payment of child support.[1]  According to Mark, the trial court erred and abused its discretion by finding him in contempt.  Mark contends that his support obligation should have been held in suspension under R.C. 3119.06(A) because he had a "minimum child support order" and was receiving means-tested assistance at the time of the contempt hearing.

{¶ 2} We conclude that R.C. 3119.06(A) does not apply to this case, and the trial court did not abuse its discretion by finding Mark in contempt.  Mark was not entitled to have his payments suspended under R.C. 3119.06(A), which provides for suspension of support due where a party is paying a "minimum child support order" and is receiving means-tested public assistance as defined by R.C. 3119.01(C)(12)(a).  R.C. 3119.01 and R.C. 3119.06(A) do not apply because Mark was not paying a "minimum child support order."  Instead, the contempt action involved an "arrearage only" order and was governed by R.C. 3123.14, not R.C. Chap. 3119.

{¶ 3} In considering whether Mark should be held in contempt, the trial court was not deciding what amount should be withheld for the arrearage.  That issue was already decided in a prior arrearage repay order that Mark failed to appeal.  The court, rather, was addressing whether Mark failed to pay on the arrearage as previously ordered and, therefore was in contempt of court.  As a result, R.C. 3123.14 applied.  This statute allows courts to punish parties who fail to comply with pay arrearage repay orders.

---

[1] For convenience, we will refer to the original divorce parties by their first names.

{¶ 4} Mark also failed to file a transcript when he objected to the magistrate's finding that he had willfully failed to comply with the arrearage repayment order. Thus, there was no evidence that Mark was on means-tested assistance when the arrearage accrued and became final. There was also no evidence that Mark was on means-tested assistance when the contempt hearing was held. However, even if Mark had been on such assistance at the time of the hearing, R.C. Chap. 3119 would not have applied, for the reasons stated. Accordingly, the judgment of the trial court will be affirmed.

## I.   Facts and Course of Proceedings

{¶ 5} The facts in this case related to non-payment of child support are as follows. On August 25, 1993, Carol Geter filed a divorce complaint against her husband, Mark. At the time, the parties had two children, Mark Jr. and Devon, who had been born in 1989 and 1991 respectively. When Mark was held in contempt in October 2021, the children had been emancipated for many years, as they were 32 and 30 years old at that time.

{¶ 6} A final judgment and decree of divorce was filed on November 22, 1993, naming Carol as the primary residential parent and legal custodian of the children. Effective November 3, 1993, Mark was ordered to pay support of $187 per month per child, plus a 2% processing fee, for a total monthly child support payment of $382.49. At that time, an arrearage of child and spousal support existed, so an additional payment on those items was ordered in the amount of $225 per month. When the order was entered, Mark was employed.

{¶ 7} On November 20, 2000, the court filed an order suspending the child support

obligation as of March 21, 1998, due to Carol's death. At that time, an arrearage existed. Subsequently, on March 22, 2013, the Montgomery County Child Support Enforcement Agency ("SEA") filed a motion seeking to hold Mark in contempt based on his failure to pay child support. The contempt motion noted that SEA had issued an administrative default order on November 12, 2004, setting an arrears payment of $22 per month, plus a processing fee. When the motion was filed, the arrearage was $21,226.85. The trial court also granted SEA's motion to join the Montgomery County Department of Job and Family Services ("JFS") as a third-party defendant because Carol had assigned rights to JFS. This motion for contempt was later dismissed without prejudice because Mark was not successfully served.

{¶ 8} SEA filed another motion for contempt on April 17, 2017, and again asked to add JFS as a third-party defendant. The court again ordered SEA to be added to the action. The arrearage at that time was $21,246.79. On June 26, 2017, SEA filed a motion to amend its motion to a "Motion to Establish Arrears Repay" pursuant to R.C. 3121.36. A hearing on the repay motion was set for August 10, 2017.

{¶ 9} On November 17, 2017, a magistrate filed a decision, noting that the matter had come before the court on August 10, 2017, for a hearing on SEA's motion to establish an arrearage payment. Mark had failed to appear for that hearing. Based on the evidence presented, the magistrate found that Mark had last paid support in 2007, that there was no information concerning Mark's current finances, and that the current arrearage was $21,183.15, plus fees. The magistrate, therefore, ordered Mark to pay $50 per month and to report employment to the SEA.

{¶ 10} Because no objections were filed, the trial court filed a judgment entry on December 8, 2017, adopting the magistrate's decision and ordering Mark to pay $50 per month on the arrearage and to report his employment to the SEA. No appeal was taken from that judgment.

{¶ 11} On October 8, 2019, SEA filed a motion asking the court to hold Mark in contempt for failing to pay child support as ordered. At that time, the arrearage was approximately $21,237, with the last payment having been received around January 10, 2018. The same day, SEA filed a motion seeking joinder of JFS as a third-party defendant to enforce the support order. The court permitted the joinder.

{¶ 12} After Mark was served, a public defender filed a notice of appearance on his behalf on October 22, 2019. After the first appearance hearing was held, the court filed an agreed order stating that the current support order was $50 per month on the arrearage and that Mark had denied the contempt and/or arrearage. A further hearing was set for February 7, 2020, and Mark was ordered to provide documentation of his inability to work. After that hearing, another agreed order was filed setting a contempt hearing for April 3, 2020. This order also said that Mark was to provide medical documentation as to disability.

{¶ 13} The April 2020 hearing was continued due to Covid emergency orders and was subsequently continued again to December 18, 2020, with a notation that Mark would pursue a "social security claim/SSD and would bring in a doctor's statement as to disability to the next hearing." Another agreed order was filed on December 21, 2020, setting the matter for further review on June 18, 2021. Again, Mark was ordered to obtain proof of

disability.   That order was later amended due to a clerical mistake, and the scheduled review hearing was changed to a contempt hearing.   The contempt hearing was then rescheduled to July 9, 2021.

{¶ 14} At the July 9, 2021 hearing, Mark appeared with counsel.   The transcript of the hearing was not filed until after a final judgment was issued in the case.   The transcript was filed in the trial court on March 8, 2022, and with our court on March 10, 2022.

{¶ 15} Following the hearing, Mark filed a motion on July 15, 2021, seeking to dismiss the contempt motion.   The motion was based on a claim that Mark's duty to pay support should have been suspended pursuant to R.C. 3119.06.   SEA replied to the motion on July 23, 2021.   On July 28, 2021, the magistrate filed a decision finding Mark in contempt based on "unequivocal evidence" that he had not paid child support as ordered.   Magistrate's Decision (July 28, 2021), p. 3.   The magistrate further held that Mark failed to present any evidence that he was unable to work, despite having been asked to do so from 2019 to 2021, i.e., for nearly two years.   *Id.*

{¶ 16} The magistrate also rejected Mark's argument that receipt of food stamps and Medicaid exempted him from paying on the child support arrearage; instead, the magistrate found that Mark had willfully refused to pay the arrearage and had refused to provide evidence of his inability to work.   *Id.*   Accordingly, the magistrate found Mark in contempt, sentenced him to 30 days in jail, and suspended the sentence on the condition that he pay on the arrearage as ordered.   *Id.* at p. 4.   The magistrate also dismissed Mark's July 15, 2021 motion to dismiss and set a compliance review hearing for January

7, 2022.

{¶ 17} On August 11, 2021, Mark filed objections to the magistrate's decision. SEA responded on August 20, 2021, and Mark filed a reply on August 27, 2021. On October 28, 2021, the trial court overruled Mark's objections. The court noted that no transcript of the contempt hearing had been filed. Decision and Judgment (Oct. 28, 2021), p. 2.

{¶ 18} In the decision, the court found that Mark did not have a minimum child support order within the definitions in R.C. 3119.01; instead, he had an "arrearage only" order under R.C. 3123.14. Thus, collection of the arrearage was governed by R.C. Chap. 3123, not R.C. Chap. 3119. As a result, any means-tested exceptions in R.C. Chap. 3119 did not apply. *Id.* at p. 4-5. The court also found that even if Mark's obligation arose under R.C. 3119.06 and his receipt of food stamps and Medicaid benefits qualified as means-tested benefits, the arrearage payment could still be enforced. *Id.* at p. 5. This was because there was no evidence that Mark received means-tested benefits during the period in which the arrearage accrued. *Id.* at p. 5-6.

{¶ 19} After overruling the objections, the trial court found Mark in contempt and imposed the same sanctions the magistrate had ordered. Mark then timely appealed from the judgment.


II. Contempt of Court

{¶ 20} Mark's sole assignment of error states that:

The Trial Court Exceeded Its Statutory Authority, Acted Without

Authority and/or Abused Its Discretion When It Found Defendant/Obligor in Contempt of Court for Failure to Pay a Minimum Order of Child Support at Such Time as Said Obligor Was Receiving Means Tested Public Assistance.

{¶ 21} Before addressing the assignment of error, we will outline the standards that apply to contempt decisions and their review.


A. Contempt Standards

{¶ 22} "Contempt is defined in general terms as disobedience of a court order." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). "The power of contempt is inherent in a court, such power being necessary to the exercise of judicial functions." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988). "A common pleas court has both inherent and statutory power to punish contempts * * *." *Burt v. Dodge*, 65 Ohio St.3d 34, 35, 599 N.E.2d 693 (1992), citing *Zakany v. Zakany*, 9 Ohio St.3d 192, 459 N.E.2d 870 (1984), syllabus. "Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order. * * * Thus, civil contempts are characterized as violations against the party for whose benefit the order was made." (Citation omitted.) *Corn* at 554-555.

{¶ 23} "A prima facie case of contempt is made by establishing a prior court order and a violation of its terms," and contempt findings "must be supported by clear and convincing evidence." (Citations omitted.) *Martin v. Martin*, 179 Ohio App.3d 805,

2008-Ohio-6336, 903 N.E.2d 1243, ¶ 24 (2d Dist.). After the moving party proves a violation, the nonmovant bears the burden of establishing a defense for noncompliance. *Id.*

{¶ **24**} We review contempt orders for abuse of discretion. *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 21. An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.* This standard of review is "highly deferential," and "we will not lightly substitute our interpretation for that of the issuing court." (Citations omitted.) *Id.* at ¶ 29.

## B. Discussion

{¶ **25**} Under his assignment of error, Mark contends that the trial court erred and abused its discretion because it failed to recognize that his child support payments were a "minimum child support order" that should have been stayed under R.C. 3119.06(A) due to his receipt of means-tested assistance. As noted, the trial court disagreed, finding that Mark did not have a minimum child support order under R.C. 3119.06. Instead,

Mark's obligation was an "arrearage only" order and was governed by R.C. 3123.14, not R.C. Chap. 3119. The court also found that even if Mark's obligation arose under R.C. 3119.06 and Mark received means-tested benefits, Mark was not receiving assistance when the arrearage arose. As a result, Mark could be held in contempt for failing to pay as ordered.

{¶ 26} As mentioned, Mark failed to file a transcript of the contempt hearing, but he did file a transcript during the course of this appeal. We cannot consider transcripts that were not before a trial court when it overruled a party's objections to a magistrate's decision. *Daniel v. Daniel*, 2d Dist. Miami No. 2005-CA-9, 2006-Ohio-411, ¶ 13. *See also Springfield Venture, L.L.C. v. U.S. Bank, N.A.*, 2015-Ohio-1983, 33 N.E.3d 85, ¶ 48 and fn. 4 (2d Dist.) "On appeal of a judgment rendered without the benefit of a transcript or affidavit, an appellate court only considers whether the trial court correctly applied the law to the facts as set forth in the magistrate's decision." *In re Estate of Lucas*, 2d Dist. Montgomery No. 23088, 2009-Ohio-6392, ¶ 32, citing *Ross v. Cockburn*, 10th Dist. Franklin No. 07AP-967, 2008-Ohio-3522, ¶ 6.

{¶ 27} Here, Mark's assignment of error relates to means-tested assistance that he received. However, there is no actual evidence in the record regarding this assistance. Concerning this point, the magistrate's decision stated that:

> Defendant/obligor's argument [is] that his receipt of benefits – food stamps and Medicaid – exempt him from paying on his child support arrearage. This argument is not persuasive. Defendant/obligor has willfully refused to pay on the arrearage [and] has refused to provide any

evidence of his inability to work.

Magistrate's Decision (July 28, 2021), p. 3.

{¶ 28} For purposes of discussion, we will assume that the "facts" in the magistrate's decision include (besides willful failure to pay on the arrearage) that Mark may currently be receiving food assistance and Medicaid.   We note that the magistrate did not find these facts proven; instead, the decision stated that this was Mark's "argument."   The magistrate also did not specifically address Mark's claim concerning R.C. 3119.06.   However, the trial court did, and it found the statute did not apply.

### 1.   Potentially Applicable Statutes

{¶ 29} In his brief, Mark discusses both the current versions of R.C. 3119.01 (a definitional statue) and R.C. 3119.06, as well as versions that were in effect at the time of the July 9, 2021 contempt hearing.   Appellant's Brief, p. 3-6.   Mark did not, however, mention the statute the trial court found applicable, i.e., R.C. 3123.14.   An initial question arises as to which of these statutes may apply and what version should be used, since they all have been amended at various times.

{¶ 30} Before we consider which statute or version applies, we note the general principle that "absent a clear pronouncement by the General Assembly that a statute is to be applied retrospectively, a statute may be applied prospectively only."   *State v. LaSalle*, 96 Ohio St.3d 178, 2002-Ohio-4009, 772 N.E.2d 1172, ¶ 14.   A two-part analysis is used, with the first question being whether the General Assembly expressly made the statute retrospective.   *Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860,

929 N.E.2d 415, ¶ 30, citing *LaSalle* at 181. "The General Assembly's failure to clearly enunciate retroactivity ends the analysis, and the relevant statute may be applied only prospectively." *Id.*

**{¶ 31}** R.C. 3123.14 has been amended twice since it was enacted in 2000. *See* S.B. 180, 2000 Ohio Laws 291, effective on March 22, 2001; Sub.S.B. 70, 2018 Ohio Laws 48, effective on February 11, 2019; and Sub.H.B. 366, 2018 Ohio Laws 76, effective on March 28, 2019.[2] The latest amendment would have been effective when the contempt motion was filed in October 2019, and there has been no amendment since. Therefore, the latest version would apply to the contempt proceedings.

**{¶ 32}** R.C. 3119.01 was also enacted in 2000 as part of S.B. 180.[3] A number of amendments occurred thereafter, but the most recent amendments before the 2017 arrearage repay order occurred in 2012. Those amendments were effective on September 28, 2012. *See* Am.Sub.H.B. 337, 2012 Ohio Laws 131. R.C. 3119.01 was not amended again until 2018, and those amendments were not effective until March 28, 2019. *Id.* at Sub.H.B. 366. This would have been before the contempt motion was filed in October 2019. However, during the proceedings (after the magistrate's decision in July 2021 and the trial court's decision in October 2021), R.C. 3119.01 was amended

---

[2] R.C. 3123.14 replaced part of an existing statute, R.C. 2301.38(B). *See* Ohio Bill Analysis, 2000 S.B. 180, App. A ("Recodification chart organized by new section number"). R.C. 2301.38 itself was repealed in its entirety by S.B. 180. *See* S.B. 180, 2000 Ohio Laws 291.

[3] Like R.C. 3123.14, R.C. 3119.01 replaced existing sections of the Revised Code. These included R.C. 2301.34; R.C. 2301.35(J)(2); R.C. 3111.20(A); R.C. 3111.241(A); R.C. 3113.21(P); R.C. 3113.215(A); and R.C. 3113.217(A). *See* Ohio Bill Analysis, 2000 S.B. 180, at App. A.

again. *See* Am.Sub.H.B. 110, 2021 Ohio Laws 30, effective September 30, 2021. The 2021 amendments were minor and did not change any provision that is relevant here.

**{¶ 33}** R.C. 3119.06 was also enacted as part of S.B. 180 and was effective on March 22, 2001.[4] This statute was not amended again until 2018, with the amendments being effective on February 11, 2019. *See* Sub.S.B. 70, 2018 Ohio Laws 48. Another amendment occurred in 2018, with an effective date of March 28, 2019. *Id.* at Sub.H.B. 366. Again, the latest amendment was effective before the contempt motion was filed.

**{¶ 34}** Having reviewed the above statutes, we find no indication, either in the statutes themselves or in available bill analyses, that the General Assembly intended these statutes to be applied retrospectively.[5] Therefore, even if R.C. 3119.01 or R.C. 3119.06 applied, the version of those statutes that would be relevant would be those in effect when the contempt motion was filed in October 2019.

**{¶ 35}** When we speak of relevance, we do not mean that these statutes do apply or that they could affect the validity of the December 8, 2017 order itself. Mark did not appeal that judgment, and any attempt to attack its validity is barred by res judicata. *E.g., In re Rummel*, 194 Ohio App.3d 22, 2011-Ohio-2748, 954 N.E.2d 207, ¶ 14 (10th Dist.). By "relevance," we simply mean these versions were in effect when the contempt motion was filed. Likewise, the version of R.C. 3123.14 that was in effect at the time of the

---

[4] Under S.B. 180, R.C. 3119.06 replaced existing R.C. 3113.215(B)(7)(a). *See* Ohio Bill Analysis, 2000 S.B. 180, at App. A. S.B. 180 repealed R.C. 3113.215 in its entirety. *See* S.B. 180, 2000 Ohio Laws 291.

[5] *See* Ohio Bill Analysis, 2000 S.B. 180; Ohio Final Bill Analysis, 2018 H.B. 366; and Ohio Bill Analysis, 2018 S.B. 70. There was no bill analysis for Am.Sub.H.B. 337, which was enacted in 2012.

contempt filing would be applied.

### 2. Whether R.C. 3119.01 and R.C. 3119.06 Apply

{¶ 36} We will first discuss R.C. 3119.01, which is part of R.C. Chap. 3119. This chapter is located in Title XXXI of the Ohio Revised Code, which covers a wide range of topics, including "Marriage" (R.C. Chap. 3101); "Husband and Wife" (R.C. Chap. 3103); "Divorce, Legal Separation, Annulment, Dissolution of Marriage" (R.C. Chap. 3105); "Adoption" (R.C. Chap. 3107); "Children" (R.C. Chap. 3109); "Parentage" (R.C. Chap. 3111); "Neglect, Abandonment, or Domestic Violence" (R.C. Chap. 3113); "Uniform Interstate Family Support Act of 2008" (R.C. 3115); "Child Support Orders" (R.C. 3119); "Withholding or Deduction from Income" (R.C. Chap. 3121); "Child Support – Default" (R.C. Chap. 3123); "Child Support Enforcement" (R.C. Chap. 3125); and the "Uniform Child Custody Jurisdiction and Enforcement Act" (R.C. Chap. 3127).

{¶ 37} The pertinent parts of 3119.01(B) in effect in October 2019 have remained unchanged since S.B. 2000 was enacted in 2000. This subsection provides generally that: "[a]s used in this chapter and Chapters 3121., 3123., and 3125. of the Revised Code: * * * 'Child support order' means either a court child support order or an administrative child support order." R.C. 3119.01(B)(2). A "support order" is also defined generally as "either an administrative child support order or a court support order." R.C. 3119.01(B)(5).

{¶ 38} Since this subsection is unchanged from the version enacted in 2000, the Ohio Bill Analysis for S.B. 180 is pertinent. That document discusses why various

sections of the Revised Code were repealed and incorporated into a number of other sections, including R.C. 3119.01. The Bill Analysis for S.B. 180 explains that:

Under former law, Revised Code sections 3111.23 to 3111.28 governed administrative support orders, which were issued by CSEAs. Revised Code sections 3113.21 to 3113.219 govern court-issued support orders. Many of the provisions concerning administrative support orders and court-issued support orders were virtually identical. The act repeals the Revised Code sections governing administrative support orders and incorporates those provisions into the renumbered sections governing court-issued support orders (*see* Appendices A, B, and C). Differences between administrative and court-issued support orders in existing law are maintained.

The act establishes new definitions to clarify the types of orders to which the statute refers. "Administrative child support order" refers to orders for the support of a child that are issued by a CSEA. "Court child support order" refers to orders for the support of a child that are issued by a court. "Child support order" encompasses both administrative and court child support orders. "Court support order" includes both a court child support order and an order for the support of a spouse. Finally, a "support order" means an administrative child support order or a court support order.

Ohio Bill Analysis, 2000 S.B. 180.

**{¶ 39}** The Bill Analysis for S.B. 180 further states that "[t]he act reorganizes

(recodifies) the placement of child support provisions in the Revised Code. The recodification places child support laws into four new Revised Code chapters: 3119. (calculation of support); 3121. (collection and enforcement of support); 3123. (default); and 3125. (state and local administration)." *Id.*

{¶ 40} Consistent with this reorganization effort, R.C. 3119.01(B)(2) and (5) provide general and generic definitions of terms like "child support orders" and "administrative support orders" that apply to all four chapters. However, each chapter also has its own definitions that apply to the particular chapter. *See* R.C. 3121.01; R.C. 3123.01; and R.C. 3125.01. There have been minimal changes since these definitions were outlined in S.B. 180. Consequently, the inclusion of and reference to all four chapters in R.C. 3119.01(B)(2) is not significant and does not mean that anything in R.C. Chap. 3119 (other than these general definitions) necessarily applies to these other chapters.

{¶ 41} R.C. 3119.01 also contains definitions that apply only to R.C. Chap. 3119. In this regard, R.C. 3119.01(C), as in effect when the contempt motion was filed, stated that:

*As used in this chapter:*

* * *

(3) "Court child support order" means any order issued by a court for the support of a child pursuant to Chapter 3115. of the Revised Code, section 2151.23, 2151.231, 2151.232, 2151.33, 2151.36, 2151.361, 2151.49, 3105.21, 3109.05, 3109.19, 3111.13, 3113.04, 3113.07, 3113.31,

3119.65, or 3119.70 of the Revised Code, or division (B) of former section 3113.21 of the Revised Code.

* * *

(5) "Court support order" means either a court child support order or an order for the support of a spouse or former spouse issued pursuant to Chapter 3115. of the Revised Code, section 3105.18, 3105.65, or 3113.31 of the Revised Code, or division (B) of former section 3113.21 of the Revised Code.

(Emphasis added.)   Sub.H.B. 366, 2018 Ohio Laws File 76, effective March 28, 2019.[6]

{¶ 42} Thus, while R.C. 3119.01(B)(2) and (5) contain some general definitions of child support orders that relate to various chapters of the Revised Code, the definitions in R.C. 3119.01(C)(3) and (5) apply *only* "as *used* in R.C. Chap. 3119."

{¶ 43} R.C. Chap. 3119 contains various statutory provisions pertaining to calculation of child support, including matters like "[p]arents' child support and cash medical support," a child support schedule, child support guideline worksheets and instructions, minimum child support orders, deviations from support ordered, factors for deviation, and processing charges.   *See* R.C. 3119.02; R.C. 3119.021; R.C. 3119.022; R.C. 3119.06; R.C. 3119.22; R.C. 3119.23; and R.C. 3119.27.   In other words, these statutes involve assessment of what child support a parent (obligor) will be required to pay.

{¶ 44} As an example, R.C. 3119.02 deals with "[p]arents' child support and cash

---

[6] The only difference between this version and the one originally enacted in S.B. 180 is a change in numbering.   *Compare* S.B. 180, 2000 Ohio Laws 291.

medical support." Like the statutes already mentioned, R.C. 3119.02 was enacted in 2000 as part of S.B. 180.[7] It was not amended thereafter until 2018, and the amendments were effective on March 28, 2019. *See* Sub.H.B. 366, 2018 Ohio Laws File 76. This statute has not been amended since. Again, there is no indication that the amendments were intended to apply retrospectively. The 2019 version, therefore, was effective when the arrearage repay order was issued and when the contempt motion was filed in October 2019. The original version would have been in effect when the arrearage repay order was issued in 2017. There is no significant difference between the 2019 version and the one enacted in 2000 by S.B. 180. Compare S.B. 180, 2000 Ohio Laws 291. The primary difference is the addition of cash medical support, which is irrelevant here.

{¶ 45} Under the version effective in 2019, R.C. 3119.02 says that:

In any action in which a court child support order *is issued or modified, in any other proceeding in which the court determines the amount of child support that will be ordered to be paid* pursuant to a child support order, * * * the court * * * *shall calculate the amount of the parents' child support and cash medical support in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of Chapter 3119.* of the Revised Code. The court * * * shall specify the support obligation as a monthly amount due and *shall order the support obligation*

---

[7] R.C. 3119.02 replaced existing "R 3113.215(B)(1), first and second sentence." Ohio Bill Analysis, 2000 S.B. 180 at App. A. Again, S.B. 180 repealed R.C. 3113.215 in its entirety. *See* S.B. 180, 2000 Ohio Laws 291.

*to be paid in periodic increments* as it determines to be in the best interest

of the children.

(Emphasis added.)    Sub. H.B.366, 2018 Ohio Laws 76.

**{¶ 46}** The provisions in R.C. 3119.02 clearly relate to original issuance of child support orders, modification of those orders, or other proceedings in which support "will be ordered."    However, child support was not ordered in December 2017; it had already been ordered in 1993 and suspended in 2000.    The issue in 2017 was only a payment order on an existing arrearage.    As SEA has noted, no calculations or worksheets were done in connection with the 2017 order.    SEA Brief, p. 1 and 5-6.

**{¶ 47}** Similarly, when the contempt motion was filed in October 2019, R.C. 3119.06 stated that:

(A) Except as otherwise provided in this section, *in any action in which a court \* \* \* issues or modifies a child support order or in any other proceeding in which a court \* \* \* determines the amount of child support to be paid* pursuant to a child support order, the court \* \* \* shall issue a minimum child support order requiring the obligor to pay a minimum of eighty dollars a month *for all the children subject to that order*.    The court \* \* \* in its discretion and in appropriate circumstances, may issue a minimum child support order of less than eighty dollars a month or issue an order not requiring the obligor to pay any child support amount.    The circumstances under which a court \* \* \* may issue such an order include the *nonresidential parent's* medically verified or documented physical or mental disability or

institutionalization in a facility for persons with a mental illness or any other circumstances considered appropriate by the court or agency.

If a court * * * issues a minimum child support obligation pursuant to this section and the obligor under the support order is the recipient of means-tested public assistance, as described in division (C)(12)(a) of section 3119.01 of the Revised Code, *any unpaid amounts of support due under the support order shall accrue as arrearages from month to month*, and the obligor's *current obligation to pay the support due under the support order is suspended during any period of time that the obligor is receiving means-tested public assistance and is complying with any seek work orders issued pursuant to section 3121.03 of the Revised Code.* The court, obligee, and child support enforcement agency shall not enforce the obligation of the obligor to pay the amount of support due under the support order while the obligor is receiving means-tested public assistance *and* is complying with any seek work orders issued pursuant to section 3121.03 of the Revised Code.

(B) *As used in this section*, "means-tested public assistance" includes cash assistance payments under the Ohio works first program established under Chapter 5107. of the Revised Code, financial assistance under the disability financial assistance program established under Chapter 5115. of the Revised Code, supplemental security income, or means-tested veterans' benefits.

(Emphasis added.)

{¶ 48} As originally enacted in S.B. 180, R.C. 3119.06 contained very similar wording, only the amount of the minimum child support order was $50. In addition, the statute referred to "need-based public assistance" and did not define that term. *See* S.B. 180, 2000 Ohio Laws File 291. The first version passed in 2018 and effective on February 11, 2019 substituted "means-tested public assistance" for "needs based public assistance" and added subsection (B) to define this term. *See* 48 Sub. S.B. 70, 2018 Ohio Laws 48. The bill analysis for that legislation did not indicate the reason for the change; it simply stated that the term had been changed. *See* Ohio Bill Analysis, 2018 S.B. 70. The final amendment, effective on March 28, 2019 (and the version in effect when the contempt motion was filed) did not make substantive changes that are relevant here.

{¶ 49} The language emphasized above, by referring to matters like a "nonresidential parent's disability" and accrual of unpaid support amounts as arrearages from month to month reveals that R.C. 3119.06 is not intended to apply to situations like the present. Again, when the 2017 arrearage repay order was entered, the court was not issuing or modifying a support order, there was no longer any residential or nonresidential parent, and there were no amounts due under the child support order that were going to accrue as arrearages from month to month. Instead, at that time, any amounts becoming due under the support order had ended due to the 2000 suspension of support and the children's emancipation, which would have occurred many years earlier. The issue, rather, involved default and was governed by a different chapter.

*See In re: J.N.*, 2d Dist. Greene No. 2017-CA-61, 2018-Ohio-2557, ¶ 24, quoting *Morgan v. Williams*, 10th Dist. Franklin No. 12AP-694, 2013-Ohio-3098, ¶ 10 (" 'R.C. Chapter 3119 governs child support orders and R.C. Chapter 3123 governs default under a child support order.' ")

{¶ 50} In addition, no "seek work" orders had ever been issued to Mark. As the SEA notes, this requirement in R.C. 3119.06 is conjunctive. SEA Brief at p. 4 and 9, citing *State ex rel. Florence v. Florence*, 2d Dist. Montgomery No. 22463, 2008-Ohio-488, ¶ 11. There was also *no evidence* in 2017 that Mark was on any type of need-based assistance. And, even if the 2019 version of R.C. 3119.06 were applied, there was no evidence that Mark was on "means-tested" assistance in 2017 (or, in fact, in 2019, when the contempt motion was filed).

{¶ 51} For all the reasons stated, the December 8, 2017 arrearage repay order was not a "minimum child support order" to which R.C. 3119.06(A) applied. Consequently, R.C. 3119.06(A) did not provide a basis for "suspending" the arrearage repay order and excusing Mark from being held in contempt.


3.   Statutes That Do Apply – R.C. 3121.36 and R.C. 3123.14

{¶ 52} The SEA's 2017 "Motion to Establish Arrears Repay" was brought pursuant to R.C. 3121.36, which is simply a statute providing continuing jurisdiction for courts and child support enforcement agencies to collect "any overdue and unpaid support or arrearage" and for the court's continuing power to "punish" people's failure to pay, even after support orders terminate. Like the other statutes we have discussed, R.C. 3121.36

was enacted as a new section in 2000 as part of S.B. 180.   *See* S.B. 180, 2000 Ohio Laws 291.[8]

{¶ 53} R.C. 3121.36 was not amended again until the 2018 amendments became effective on March 28, 2019.   *See* Sub.H.B. 366, 2018 Ohio Laws File 76.   As result of these amendments, R.C. 3121.36 remained essentially the same and did not change the continuing jurisdiction of the court and agency.   R.C. 3121.36 clearly provides for the SEA and courts to retain the power to collect unpaid support and arrearages and to proceed with contempt actions even though a particular support order may have ended, as it did here many years ago.

{¶ 54} Furthermore, as noted, a separate chapter, R.C. Chap. 3123, deals with "Child Support – Default."   The statute the trial court referenced, R.C. 3123.14, is in that chapter.   Again, Mark's brief does not mention this statute.

{¶ 55} R.C. 3123.14 was also enacted in 2000 as part of S.B. 180.[9]   As effective on March 22, 2001, R.C. 3123.14 provided that:

> If a child support order is terminated for any reason, the obligor under the child support order is or was at any time in default under the support order and, after the termination of the order, the obligor owes an arrearage under the order, the obligee may make application to the child support

---

[8] R.C. 3121.36 replaced existing R.C. 3113.21(M)(1).   Ohio Bill Analysis, 2000 S.B. 180 at App. A.   S.B. 180 repealed R.C. 3113.21 in its entirety.   *See* S.B. 180, 2000 Ohio Laws 291.

[9] R.C. 3123.14 replaced existing R.C. 2301.38(B).   Ohio Bill Analysis, 2000 S.B. 180 at App. A.   S.B. 180 repealed R.C. 2301.38 in its entirety.   *See* S.B. 180, 2000 Ohio Laws 291.

enforcement agency that administered the child support order prior to its termination or had authority to administer the child support order to maintain any action or proceeding on behalf of the obligee to obtain a judgment, execution of a judgment through any available procedure, an order, or other relief. If a withholding or deduction notice is issued pursuant to section 3121.03 of the Revised Code to collect an arrearage, the amount withheld or deducted from the obligor's personal earnings, income, or accounts shall be at least equal to the amount that was withheld or deducted under the terminated child support order.

S.B. 180, 2000 Ohio Laws File 291.

{¶ 56} The bill analysis for S.B. 180, states, concerning R.C. 3123.14 and 3121.36, that:

The act provides that the termination of a court support order or an administrative child support order does not abate the authority of a court or CSEA to issue the withholding or deduction notices or other appropriate orders to collect arrearages under the terminated support order. The act also provides that if an income withholding or financial deduction notice is issued to collect an arrearage, the amount withheld or deducted from the obligor's personal earnings, income, or accounts must be at least equal to the amount that was withheld or deducted under the terminated support order.

Ohio Bill Analysis, 2000 S.B. 180.

{¶ 57} R.C. 3123.14 has been amended twice since it was enacted. *See* Sub.S.B. 70, 2018 Ohio Laws 48, effective on February 11, 2019, and Sub.H.B. 366, 2018 Ohio Laws 76, effective March 28, 2019.

{¶ 58} Before the 2018 amendments, courts had held that the wording in R.C. 3121.36 and R.C. 3123.14 was unambiguous and mandatory, and that when courts liquidated arrearages and assigned a monthly payment amount, they did not have the ability to decease the monthly amount below what the obligor had previously been ordered to pay. *See Taskey v. Bonner*, 8th Dist. Cuyahoga No. 94601, 2010-Ohio-5488, ¶ 15-17, agreeing with *Sinnott v. Sinnott*, 10th Dist. Franklin No. 02AP-1277, 2003-Ohio-4571, and *Bennett v. Bennett*, 9th Dist. Summit App. 22798, 2006-Ohio-1305.

{¶ 59} For example, in *Sinnott*, the amount of ordered child support at the time the arrearage was liquidated was around $360 per month. However, the trial court only ordered the obligor to pay $200 per month toward the arrearage. *Sinnott* at ¶ 11. Based on the wording of R.C. 3121.36, the Tenth District Court of Appeals held that the trial court was required to assess at least the amount due under the terminated support order, i.e., $360. *Id.*

{¶ 60} The first amendment in 2018 to R.C. 3123.14 made some non-substantive changes in wording. The second amendment, which was effective on March 28, 2019, changed some language, and no further amendments have been made since. Again, this would have been the statute in effect when the contempt motion was filed. The prior version was in effect when the 2017 arrearage repay order was issued.

{¶ 61} As amended, R.C. 3123.14 changed the court's ability to choose the

monthly amount to be paid on an arrearage. In this regard, the last few sentences of the statute were amended to say that:

> If a withholding or deduction notice is issued pursuant to section 3121.03 of the Revised Code to collect an arrearage, the amount withheld or deducted from the obligor's personal earnings, income, or accounts shall be rebuttably presumed to be at least equal to the amount that was withheld or deducted under the terminated child support order. A court or agency administering the child support order may consider evidence of household expenditures, income variables, extraordinary health care issues, and other reasons for deviation from the presumed amount.

Sub.H.B. 366, 2018 Ohio Laws 76; *see also* current R.C. 3123.14. The same bill also changed the language in R.C. 3121.36 to allow for a rebuttable presumption.

{¶ 62} The changed language gave courts some flexibility in choosing the monthly amount to be paid on arrearages. Courts were no longer restricted to ordering payment of an amount that was at least equal to the amount deducted under the terminated court order. While that amount was "rebuttably presumed" to be proper, courts could now consider other items and deviate. This was likely motivated by observations like the one made in *Taskey*, where the court stated that "[u]ntil the legislature gives the trial court the discretion to modify arrearage payments in the way it finds equitable and just, we are constrained to apply the mandates set forth in R.C. 3121.36 and R.C. 3123.14." *Taskey*, 8th Dist. Cuyahoga No. 94601, 2010-Ohio-5488, at ¶ 17. *See also* Ohio Bill Analysis, 2018 H.B. 366 (discussing collection of arrearages and the fact that prior law "required

the amount withheld or deducted to be at least equal to the amount withheld or deducted under the prior order").

**{¶ 63}** Although these changes were effective before the SEA brought its contempt action and before the trial court made its October 28, 2021 decision, they are irrelevant to this case. Specifically, the trial court was not considering what amount should be withheld for the arrearage. That had already been decided in the 2017 order and was not at issue.[10] Instead, the court was considering whether Mark had failed to pay on the arrearage as previously ordered and, therefore, was in contempt of court. *See J.N.*, 2d Dist. Greene No. 2017-CA-61, 2018-Ohio-2557, at ¶ 26.

**{¶ 64}** *J.N.* involved circumstances similar to those in the case before us, although the obligor in that case, unlike Mark, at least provided some evidence about his circumstances. In *J.N.*, the obligor was held in contempt in 2017 based on his failure to pay on an arrearage owed for child support. *Id.* at ¶ 1. Previously, in 2005, the obligor's support obligation had been terminated because his child had reached the age of majority; at that time, the obligor was ordered to pay a monthly amount on the arrearage. *Id.* at ¶ 2. During the 2017 contempt hearing, the obligor stated that he had been on Social Security Disability ("SSI") since 2006. In objecting to the magistrate's decision finding him in contempt, the obligor claimed that SSI could not be included as gross income for computing child support. *Id.* at ¶ 3-9. On appeal, our court disagreed.

**{¶ 65}** We noted that under R.C. 3123.18, "if a court or child support enforcement

---

[10] It could be argued that Mark should have been ordered to pay more in 2017, because his original support order was $382.49 per month. However, after that order, the SEA issued a default order in 2004, requiring repayment of $22 per month. Thus, the $50 ordered in 2017 exceeded that amount.

agency finds an obligor to be in default under a support order: '* * * each payment or installment that was due and unpaid under the support order that is the basis for the default determination plus any arrearage amounts that accrue after the default determination and during the period of default shall be a final judgment which has the full force, effects, and attributes of a judgment entered by a court of this state for which execution may issue under Title XXIII of the Revised Code." *J.N.* at ¶ 24, quoting R.C. 3123.18.

{¶ 66} In addition, we stressed that under R.C. 3123.83, " 'a court or child support enforcement agency may not retroactively modify an obligor's duty to pay a delinquent support payment.' " *Id.* at ¶ 25, quoting R.C. 3123.83. We noted that R.C. 3123.84 has an exception allowing modification of support payments that become due after a petition to modify is filed but found this did not apply to the obligor. *Id.* In this regard, we stated that:

> The contested payments herein are not current child support payments but rather are arrearage payments, as T.N. [the obligor] did not fulfill his child support obligation when J.N. was of minor age. J.N. reached the age of majority and was emancipated in 2005, and T.N. testified that he began receiving SSI in 2006 or 2008. As in *Morgan*, T.N. did not receive SSI during the time his arrearage accumulated. T.N. did not move the court to reduce his arrearage.

*J.N.* at ¶ 26, citing *Morgan*, 10th Dist. Franklin No. 12AP-694, 2013-Ohio-3098.

{¶ 67} Like the obligor in *J.N.,* nothing in the record indicates that Mark was

receiving assistance when his arrearage accumulated. Furthermore, Mark did not move the court to reduce his arrearage before the arrearage became final.

{¶ 68} Based on the preceding discussion, the trial court retained the ability under R.C. 3123.14 and R.C. 3121.36 to hold obligors like Mark in contempt for failing to pay on arrearages, even if their support orders are terminated. Again, the current matter was simply a contempt proceeding to enforce a prior final judgment, which the court could consider under these statutes. It was not a situation in which the court was deciding anew if it should order payment of child support or modify child support, or even order a withholding order based on a support arrearage. Accordingly, there was no reason to consider R.C. 3119.01 or R.C. 3119.06 and whether payment should be suspended based on Mark's alleged receipt of means-tested assistance.

4. Means-tested Assistance

{¶ 69} Both sides have discussed means-tested assistance, which is excluded from "gross income" under R.C. 3119.01(C)(12). Because we have found R.C. 3119.01 and R.C. 3119.06 inapplicable, we need not consider this point. We do note the following comment by a concurring judge in *J.N.*, who stated that*:

> The Appellant's child support order was calculated, and the final arrearage determined, prior to his eligibility for and receipt of Social Security payments. The law, R.C. 3119.01(C)(7)(a), that such means-tested benefits would be excluded from any current calculations of support or arrearage is irrelevant.

Contempt is the willful failure to comply with a court order – in this case the failure to pay the arrearage. The only question is whether the trial court abused its discretion when it found that Appellant had approximately $60 available at the end of each month from which he could make some payment toward the arrearage. I concur that there was no abuse of discretion.

*J.N.* at ¶ 28-29 (Froelich, J., concurring).

{¶ 70} The same reasoning applies here. When Mark's arrearage accrued, there is no evidence that he was on any type of means-tested assistance. Therefore, regardless of how exclusions from "gross income" are now defined in R.C. 3119.01(C)(12) (formerly R.C. 3119.01 (C)(7)), that statute is irrelevant.[11] Issues regarding the meaning of "means-tested" assistance are also irrelevant. Consequently, we need not consider the parties' arguments on this point.

{¶ 71} As a final matter, the trial court did not abuse its discretion in finding Mark in contempt. The trial court "correctly applied the law to the facts as set forth in the magistrate's decision." *Estate of Lucas*, 2d Dist. Montgomery No. 23088, 2009-Ohio-6392, at ¶ 32.

III. Conclusion

{¶ 72} Mark's sole assignment of error having been overruled, the judgment of the

---

[11] The numbering of R.C. 3119.01(C) was changed via an amendment that occurred after *J.N.* was decided. However, the content, as pertinent here, remained the same. *See* Sub.H.B. 366, 2018 Ohio Laws 76, effective March 28, 2019.

trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Gregory J. Sauer
Dawn S. Garrett
Hon. Denise L. Cross